OPINION
BYBEE, Circuit Judge:
We agreed to rehear this case en banc to clarify under what circumstances the IDEA’S exhaustion requirement bars non-IDEA federal or state law claims.
Appellant Windy Payne, on behalf of herself and her son, D.P., appeals the district court’s grant of summary judgment to the defendants. The district court dismissed her claim for lack of subject matter jurisdiction because Payne did not initially seek relief in a due process hearing and therefore failed to comply with one of the exhaustion-of-remedies requirement of the Individuals with Disabilities Education Act (“IDEA”), 20 U.S.C. § 1415(Z). We hold that (1) the IDEA’S exhaustion requirement is not jurisdictional, and (2) Payne’s non-IDEA federal and state-law claims are not subject to the IDEA’S exhaustion requirement. We therefore reverse.
I
The facts in this case, and the inferences to be drawn from them, are vigorously contested by the parties. Because Payne is appealing an adverse grant of summary judgment, we review this case de novo and state the facts in the light most favorable to her case, Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir.2004), although we outline only the facts material to our decision.
D.P. is a minor who was diagnosed with oral motor apraxia and autism when he was five years old. During the 2003-04 school year, when D.P. was seven, he was placed in a contained special education classroom within Artondale Elementary School, part of the Peninsula School District. Defendant Jodi Coy was his teacher that year. Coy employed a small room about the size of a closet as a time-out room or “safe room” for students who became “overly stimulated.”
At a meeting to discuss D.P.’s Individual Education Program (“IEP”)[1] and Behav *866 ior Assessment Plan, Coy requested permission to use the time-out room while the IEP paperwork was pending. The Paynes initially objected, claiming that their son was unable to perceive a difference between positive and negative reinforcement. They eventually gave limited consent to the time-out room, specifying that they would agree to allow Coy to use the room for time-out periods only (and not punishment), but that the door had to remain open and that D.P. was not to be left alone inside the room. According to Payne, Coy nonetheless used the room to punish D.P. and locked him in the closet a number of times without supervision. In some instances, D.P. responded by removing his clothing and urinating or defecating on himself. Although the Paynes repeatedly requested that Coy stop using her “aversive therapy” techniques, Coy continued. Eventually, in January 2004, Coy refused to allow the Paynes to visit her classroom or pick up their son directly from the classroom, insisting that the Paynes might misinterpret what they observed.
The Paynes and the school district underwent mediation, and they agreed that D.P. would transfer to another school in the district. Later, the Paynes removed D.P. from the public school system and began home schooling him. They never underwent a formal due process hearing with the school district.
In 2005, Windy Payne filed the current complaint on behalf of herself and her son, seeking relief under 42 U.S.C. § 1983 by alleging violations of the Fourth, Eighth, and Fourteenth Amendments, and the IDEA. The complaint also advanced negligence and outrage claims under Washington law. The defendants moved for summary judgment, claiming that Payne had failed to exhaust her remedies as required by 20 U.S.C. § 1415(0 by failing to go through the informal due process hearing and appeal process established by 20 U.S.C. § 1415(f), (g). The district court dismissed Payne’s entire case, citing our decision in Robb v. Bethel School District # 403, 308 F.3d 1047 (9th Cir.2002), where we held that the IDEA’S exhaustion requirement applied to any case in which “a plaintiff has alleged injuries that could be redressed to any degree by the IDEA’S administrative procedures and remedies.” Id. at 1048.
Payne timely appealed. In a divided decision, a panel of this court affirmed the district court’s grant of summary judgment. Payne v. Peninsula Sch. Dist., 598 F.3d 1123 (9th Cir.2010), reh’g en banc granted, 621 F.3d 1001 (9th Cir.2010). The majority began by noting that the applicability of § 1415(0 depended on whether each claim more closely resembled the one in Robb, in which we held that exhaustion was required, or the one in Witte v. Clark County School District, 197 F.3d 1271 (9th Cir.1999), in which we held that exhaustion was not required. Payne, 598 F.3d at 1126-27. The panel concluded that “this case is more akin to Robb ” because Payne had failed to seek an impartial due process hearing after mediation failed, was seeking redress for academic injuries “for which IDEA provides some relief,” and was “not claiming physical injuries for D.P. within the meaning of Witte.” Payne, 598 F.3d at 1127-28. Accordingly, the panel concluded that “as an educational strategy (even if a misguided or misapplied one), [Coy’s use of the safe room] was better addressed initially by the administrative process” and affirmed the district court. Id. at 1128. Judge Noonan dissented on the ground that “[t]he facts in this case are closer to those in [Witte ] than in [Robb ]” and that “full exhaustion of the IDEA administrative processes [was not] required.” Id. at 1128-29 (Noonan, J., dissenting).
*867 On a vote of the majority of nonrecused active judges on our court, we vacated the panel opinion and agreed to rehear this case en banc. Payne v. Peninsula Sch. Dist., 621 F.3d 1001 (9th Cir.2010) (order granting rehearing en banc).
II
We begin by clarifying the nature of the IDEA’S exhaustion requirement. Adhering to this circuit’s precedent, the original panel treated the requirement as a jurisdictional one, but questioned the soundness of this conclusion. See Payne, 598 F.3d at 1124-25 & n. 2. Indeed, the conclusion it reached was consistent with our precedent. See, e.g., Blanchard v. Morton Sch. Dist., 420 F.3d 918, 920-21 (9th Cir.2005) (“If a plaintiff is required to exhaust administrative remedies but fails to do so, the federal courts do not have jurisdiction to hear the plaintiffs claim.”); Witte, 197 F.3d at 1274 (same). In light of a spate of Supreme Court cases clarifying the difference between provisions limiting our subject matter jurisdiction, which cannot be waived and must be pled in the complaint, and “claims processing provisions,” which must be pled as an affirmative defense or forfeited, see, e.g., Henderson ex rel. Henderson v. Shinseki, —U.S. —, 131 S.Ct. 1197, 1202-07, 179 L.Ed.2d 159 (2011); Reed Elsevier, Inc. v. Muchnick, — U.S. —, 130 S.Ct. 1237, 1243-48, 176 L.Ed.2d 18 (2010); see also United States v. Jacobo Castillo, 496 F.3d 947 (9th Cir.2007) (en banc), we now overrule our previous treatment of § 1415(i) and hold that the IDEA’S exhaustion requirement is a claims processing provision that IDEA defendants may offer as an affirmative defense.
Federal courts may only decide cases over which they have both constitutional and statutory jurisdiction. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-02, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). The Constitution grants federal courts jurisdiction over “all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States.” U.S. Const, art. III, § 2, cl. 1. Here, Payne raised federal claims under 42 U.S.C. § 1983 in addition to a number of state-law claims. In cases such as this one, district courts have statutory jurisdiction over federal claims, 28 U.S.C. § 1331, and supplemental jurisdiction over related state-law claims, 28 U.S.C. § 1367. Additionally, Congress has given us statutory authorization to hear “appeals from all final decisions of the district courts of the United States.” 28 U.S.C. § 1291. It is clear, then, that unless Congress has limited this jurisdiction further, the federal courts have jurisdiction over IDEA-related matters.
The IDEA’s exhaustion requirement provides:
Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this sub-chapter, the procedures under subsections (0 and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.
20 U.S.C. § 1415(Z) (emphasis added). The Fourth and Eighth Circuits share our earlier assumption that this language creates a jurisdictional limitation. See, e.g., MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th Cir.2002) *868 (“The failure of the Parents to exhaust their administrative remedies ... deprives us of subject matter jurisdiction over those claims.... ”); Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1, 89 F.3d 720, 725 (10th Cir.1996) (“We conclude that the district court correctly dismissed the [unexhausted] claims for lack of jurisdiction.”). By contrast, the Seventh and Eleventh Circuits have treated the exhaustion requirement as an affirmative defense, rather than a jurisdictional requirement. See, e.g., Mosely v. Bd. of Educ., 434 F.3d 527, 533 (7th Cir.2006) (“A failure to exhaust is normally considered to be an affirmative defense, and we see no reason to treat it differently here.” (citation omitted)); N.B. by D.G. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir.1996) (per curiam) (“The exhaustion requirement ... is not jurisdictional----”).
Last Term, the Supreme Court reminded us that “the word ‘jurisdiction’ has been used by courts ... to convey ‘many, too many, meanings’ ” and “cautioned ... against profligate use of the term.” Union Pac. R.R. Co. v. Bhd. of Locomotive Eng’rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, — U.S. —, 130 S.Ct. 584, 596, 175 L.Ed.2d 428 (2009) (quoting Steel Co. v. Citizens for a Better Env't 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). “Accordingly, the term ‘jurisdictional’ properly applies only to ‘prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)’ implicating[the court’s adjudicatory] authority.” Reed Elsevier, 130 S.Ct. at 1243 (quoting Kontrick v. Ryan, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). The Court confessed that “[w]hile perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice,” that we should “us[e] the term ‘jurisdictional’ only when it is apposite,” and that we should “curtail ... ‘drive-by jurisdictional rulings.’ ” Id. at 1243-44 (quoting Steel Co., 523 U.S. at 91, 118 S.Ct. 1003); see also Henderson, 131 S.Ct. at 1202-07 (holding that a veteran’s failure to file a notice of appeal within the required 120-day period did not deprive the Court of Veterans Appeals of jurisdiction over his claim); Reed Elsevier, 130 S.Ct. at 1249 (holding that a copyright-registration requirement was not jurisdictional); Union Pac. R.R., 130 S.Ct. at 598-99 (holding that a settlement-conference requirement was not jurisdictional); Arbaugh v. Y & H Corp., 546 U.S. 500, 514-15, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (holding that a Title VII provision exempting employers with fewer than 15 employees was not jurisdictional); Kontrick, 540 U.S. at 452-56, 124 S.Ct. 906 (holding that a bankruptcy rule governing timely amendments was not jurisdictional); United States v. Cotton, 535 U.S. 625, 630-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (holding that sentencing in excess of a statutory maximum did not deprive the sentencing court of jurisdiction). But see Bowles v. Russell, 551 U.S. 205, 209-10, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (holding that the statutory time for the taking of an appeal from a district court decision is jurisdictional).
Two cases recently decided by the Court are instructive. In Reed Elsevier, the Court examined a provision of the Copyright Act providing that copyright holders must register their works before bringing suit for copyright infringement. Section 41(a) of the Copyright Act provides that “no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.” 17 U.S.C. § 411(a). Holding that § 411(a) is not jurisdictional, the Court pointed to three factors. First, the Court pointed out that § 411(a) does not “ ‘clearly state[ ]’ that its registration requirement is ‘juris *869 dictional.’ ” Reed Elsevier, 130 S.Ct. at 1245 (quoting Arbaugh, 546 U.S. at 515, 126 S.Ct. 1235). Second, the Court noted that § 411(a) was separate from other statutes that grant subject matter jurisdiction and that neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1338 — which is specific to copyright — mentions the registration requirement. Id. at 1245-46. Finally, the Court could not find “any other factor [that] suggests] that 17 U.S.C. § 411(a)’s registration requirement can be read to ‘speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.’ ” Id. at 1246 (quoting Arbaugh, 546 U.S. at 515, 126 S.Ct. 1235); see also Henderson, 131 S.Ct. at 1202-07 (reaffirming and applying Reed Elsevier’s methodology).
In Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), the Court addressed whether the Prison Litigation Reform Act’s (“PLRA”) exhaustion requirement[2] was a pleading requirement that the prisoner must include in his complaint or an affirmative defense that the defendant must raise. The Court held that “failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.” Id. at 216, 127 S.Ct. 910. Although the Court did not treat a heightened pleading requirement as going to the jurisdiction of the federal courts, the Court’s conclusion — that PLRA defendants have the burden of pleading non-exhaustion, and that PLRA plaintiffs need not specifically plead exhaustion in their initial complaints — is consonant with our discussion of jurisdictional versus claim-processing requirements. If a requirement is jurisdictional, then a federal plaintiff has the burden of pleading in her initial complaint (however briefly) how that requirement has been met. See Fed.R.Civ.P. 8(a)(1). In other words, even though the Court did not state its result in such terms, it follows from Jones that the PLRA’s exhaustion requirement is non-jurisdictional. See Reed Elsevier, 130 S.Ct. at 1246-47 & n. 6 (citing Jones as an example of where the Court has “treated as nonjurisdictional other types of threshold requirements”).
With that background we return to the IDEA’S exhaustion requirement in § 1415(1) and to our prior statement that “[i]f a plaintiff is required to exhaust administrative remedies, but fails to, federal courts are without jurisdiction to hear the plaintiffs claim.” Witte, 197 F.3d at 1274; see also Dreher v. Amphitheater Unified Sch. Dist., 22 F.3d 228, 231 (9th Cir.1994) (suggesting, but not holding, that exhaustion was jurisdictional under the IDEA). First, we observe that nothing in § 1415 mentions the jurisdiction of the federal courts. In fact, neither the word “courts” nor the word “jurisdieation” appears in § 1415(1). Section 1415 is written as a restriction on the rights of plaintiffs to bring suit, rather than as a limitation on the power of the federal courts to hear the suit. That textual choice strongly suggests that the restriction may be enforced by defendants but that the exhaustion requirement may be waived or forfeited. See, e.g., Kontrick, 540 U.S. at 456, 124 S.Ct. 906 (“Characteristically, a court’s subject-matter jurisdiction cannot be expanded to account for the parties’ litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party’s application, can nonetheless be forfeited if the party asserting the rule waits too long *870 to raise the point.”); Jacobo Castillo, 496 F.3d at 952 (“Defects in procedural rules may be waived or forfeited by parties who fail to object properly, whereas defects in our subject-matter jurisdiction go to the inherent power of the court and cannot be waived or forfeited.” (footnote omitted)).
Second, nothing in the relevant jurisdictional statutes requires exhaustion under the IDEA. Section 1415(i) provides that if the plaintiff is “seeking relief that is also available under [the IDEA], the procedures under [20 U.S.C. § 1415(f), (g) ] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.” Section 1415(f) describes the actions that can be brought under the IDEA. A party who is “aggrieved by the findings and decision” made under the IDEA’S procedures has “the right to bring a civil action ... in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.” 20 U.S.C. § 1415(i)(2)(A). There is no restriction in this section on the subject matter jurisdiction of the federal courts. The only provision that arguably affects federal subject matter jurisdiction is the provision specifying that there is no amount-in-controversy requirement, and it appears to expand, rather than contract, federal jurisdiction. More to the point, the section expressly provides that suit may be brought in state or federal courts. As state courts are courts of general subject matter jurisdiction, it is hard to think that Congress would permit IDEA suits to be brought in state court but at the same time restrict the subject matter jurisdiction of the federal courts. Without clearer instruction from Congress, we are reluctant to infer such a restriction where Congress has not made it explicit. See Henderson, 131 S.Ct. at 1203 (“[Courts should] look to see if there is any ‘clear’ indication that Congress wanted the rule to be ‘jurisdictional.’ ”).
Finally, we can find no reason why § 1415(Z) should be read to make exhaustion a prerequisite to the exercise of federal subject matter jurisdiction. We can think of many good reasons why it should not. As we discuss in the next section, the exhaustion requirement in § 1415(Z) is not a check-the-box kind of exercise. As our cases demonstrate, determining what has and what has not been exhausted under the IDEA’S procedures may prove an inexact science. See Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1302-03 (9th Cir.1992) (noting that the IDEA’S exhaustion requirement “is not a rigid one, and is subject to certain exceptions,” determined by “the general purposes of exhaustion and the congressional intent behind the administrative scheme”). In other words, the exhaustion requirement appears more flexible than a rigid jurisdictional limitation — questions about whether administrative proceedings would be futile, or whether dismissal of a suit would be consistent with the “general purposes” of exhaustion, are better addressed through a fact-specific assessment of the affirmative defense than through an inquiry about whether the court has the power to decide the case at all. If we were to hold that exhaustion was jurisdictional, the question of exhaustion vel non would haunt the entire proceeding, including any appeals. We would have the obligation to raise the issue sua sponte, a particularly frustrating exercise for parties and courts when Congress has authorized the parties to file suit in state court in the first place. Congress may, of course, override our concerns and make the IDEA’S exhaustion requirement jurisdictional, but we would need a clearer statement of its intent before we will impose such a requirement.
In sum, we hold that the exhaustion requirement in § 1415(Z) is not jurisdictional. It “is not clearly labeled jurisdictional, is not located in a jurisdiction- *871 granting provision, and admits of congressionally authorized exceptions.” Reed Elsevier, 130 S.Ct. at 1247. We overrule our statements to the contrary in Blanchard, 420 F.3d at 920-21; Witte, 197 F.3d at 1274; and Dreher, 22 F.3d at 231, and join the Seventh and Eleventh Circuits. Mosely, 434 F.3d at 533; N.B. by D.G., 84 F.3d at 1379; see also Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 203 (2d Cir.2007) (noting that the Second Circuit “ha[s] been equivocal in [its] discussion of the IDEA’S exhaustion requirement, acknowledging [its] statement in [Polera v. Board of Education, 288 F.3d 478, 483, 488-90 (2d Cir.2002),] that the failure to exhaust IDEA administrative remedies deprives a court of subject matter jurisdiction but also referring to the IDEA’S exhaustion requirements as the defendants’ ‘non-exhaustion defense.’ ” (internal quotation marks and alterations omitted)). Our prior statements were well-intentioned even if not fully considered. We think our misstep well illustrates the Supreme Court’s observation that “[cjourts — including this Court — have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis.” Reed Elsevier, 130 S.Ct. at 1243-44.
Ill
We now turn to the merits. We hold that the IDEA’S exhaustion provision applies only in cases where the relief sought by a plaintiff in the pleadings is available under the IDEA. Non-IDEA claims that do not seek relief available under the IDEA are not subject to the exhaustion requirement, even if they allege injuries that could conceivably have been redressed by the IDEA. We overrule our previous cases to the extent that they state otherwise and conclude that, although the district court properly dismissed Payne’s IDEA-based § 1983 claim, it should not have dismissed her non-IDEA claims on exhaustion grounds.
A
The IDEA was enacted to protect children with disabilities and their parents by requiring participating states to provide “a free appropriate public education [ (‘FAPE’) ] that emphasizes special education and related services designed to meet [disabled students’] unique needs and prepare them for further education, employment, and independent living.” 20 U.S.C. § 1400(d)(1)(A). Participating states must provide eligible students with a “free appropriate public education,” id. § 1412(a)(1)(A), that, among other things, conforms to a proper IEP, see id. §§ 1412(a)(4), 1436(d), and ensures that disabled students “[t]o the maximum extent appropriate, ... are educated with children who are not disabled,” id. § 1412(a)(5)(A). Children with disabilities and their parents are provided with the extensive procedural protections set out in 20 U.S.C. § 1415. In particular, the statute requires states to provide aggrieved parties with the opportunity to mediate their disputes, id. § 1415(e), to secure an impartial due process hearing to resolve certain differences with state agencies, id. § 1415(f), and to appeal any decision and findings to the state educational agency, id. § 1415(g). As we have stated above, the exhaustion provision requires parties to avail themselves of these procedures (and the corresponding local appeals process) before resorting to the courts whenever they “seek[ ] relief that is also available under [the IDEA].” Id. § 1415(1).
The exhaustion requirement is found in § 1415(1). This provision is worth quoting again, in full:
*872 Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.
20 U.S.C. § 1415(i) (alterations in original). We begin with a few observations. First, this provision is titled “Rule of construction.” Id. It thus provides us with a rule for harmonizing the IDEA with overlapping “rights, procedures, and remedies” found in other laws. Second, the rule of construction tells us in very plain terms that the IDEA must be construed to coexist with other remedies, including remedies available under the Constitution, the Americans with Disabilities Act (“ADA”), the Rehabilitation Act, and “other Federal laws.” The principal remedy available for violations of the Constitution is 42 U.S.C. § 1983, which creates an action in law or suit in equity against any person who, acting under color of state law, deprives the plaintiff of “any rights, privileges, or immunities secured by the Constitution and laws.” Like the IDEA, the ADA and the Rehabilitation Act create their own private causes of action to enforce those acts, see 42 U.S.C. § 12117; 29 U.S.C. § 794a, although all three acts have been enforced under § 1983 as well. See, e.g., Marie O. v. Edgar, 131 F.3d 610, 622 (7th Cir.1997); K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381 F.Supp.2d 343, 361-63 (S.D.N.Y.2005); BD v. DeBuono, 130 F.Supp.2d 401, 427-29 (S.D.N.Y.2000). But see Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir.2007) (holding that § 1983 does not authorize actions predicated on violations of the IDEA). Third, the exhaustion provision in § 1415R) is framed as an exception to the general rule of construction that “[n]othing in [the IDEA] shall be construed to restrict” the rights, procedures, and remedies available under § 1983, the ADA, or the Rehabilitation Act. In other words, remedies available under the IDEA, by rule, are in addition to the remedies parents and students have under other laws. Indeed, § 1415 makes it clear that Congress understood that parents and students affected by the IDEA would likely have issues with schools and school personnel that could be addressed — and perhaps could only be addressed — through a suit under § 1983 or other federal laws. Finally, we observe that § 1415(i) requires exhaustion of IDEA remedies only when the civil action brought under § 1983, the ADA, the Rehabilitation Act, or other federal laws “seek[s] relief that is also available” under the IDEA. Thus, the “except” clause requires that parents and students exhaust the remedies available to them under the IDEA before they seek the same relief under other laws.
Our decision in Witte is consistent with these principles. There, we recognized that the IDEA’S exhaustion provision does not encompass every challenge concerning a school’s treatment of a disabled student. The Wittes complained that school officials forced their disabled child to eat oatmeal (to which he was allergic) occasionally mixed with his own vomit, choked him, and subjected him to “take-downs” and other physical abuses. Witte, 197 F.3d at 1273. These actions were punitive responses to the child’s bodily tics that resulted from Tourette’s Syndrome. Id. The Wittes eventually agreed with the school district to transfer their son to another school in the same district and then sued for com *873 pensatory and punitive damages under 42 U.S.C. § 1983, the Rehabilitation Act, the ADA, and state tort law. Id. at 1273-74. The district court granted the defendants summary judgment on the ground that the Wittes had failed to exhaust their administrative remedies under the IDEA. Id. at 1274.
We reversed. We held that the IDEA’S exhaustion provision did not apply to plaintiffs who claimed that school officials had inflicted physical and emotional abuse on their child, id. at 1273, when their complaint sought only retrospective damages because the parties had already resolved their educational issues through “the remedies that are available under the IDEA,” id. at 1276. We emphasized that because monetary damages were ordinarily unavailable under the IDEA, the plaintiffs were “not seeking relief that is also available under the IDEA.” Id.; see also id. at 1276 (“The remedies available under the IDEA would not appear to be well-suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages.”). Accordingly, “under the plain words of the statute, exhaustion of administrative remedies is not required.” Id. at 1275.
We subsequently took a more muscular view of § 1415(i) in Robb, holding “that when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA’S administrative procedures and remedies, exhaustion of those remedies is required.” Robb, 308 F.3d at 1048. Robb involved a student who was diagnosed with cerebral palsy and was regularly removed from her classroom “for extended ‘peer-tutoring’ by junior high school and high school students without the supervision of a certified teacher.” Id. This tutoring took place on the floor of a dim hallway without a chair or desk. Id. No additional abuse was alleged. Taking guidance from Witte, the Robbs limited their prayer for relief to money damages, but specified that they were for “lost educational opportunities and emotional distress, humiliation, embarrassment, and psychological injury.” Robb, 308 F.3d at 1048 (internal quotation marks omitted). The district court held that the Robbs had not exhausted their administrative remedies. Id.
We affirmed in a divided decision. The panel majority expressed concern that parents might “be permitted to opt out of the IDEA simply by making a demand for money or services the IDEA does not provide.” Id. at 1050. Noting that there appeared to be a division of authority among the circuits — the Third Circuit took the position that exhaustion was unnecessary in a suit seeking only damages, while the First, Sixth, Seventh, Tenth, and Eleventh Circuits held that limiting requested relief to damages alone was not enough to avoid the exhaustion requirement of the IDEA[3] — we held “that a plaintiff cannot avoid the IDEA’S exhaustion requirement merely by limiting a prayer for relief to money damages.” Id. at 1049. We then adopted the rule that the IDEA’S exhaustion requirement applied to any case in which a plaintiff “alleged injuries that could be redressed to any degree by the IDEA’S administrative procedures and remedies.” Id. at 1050 (emphasis added).[4] *874 In a number of subsequent cases, we have reaffirmed Robb’s “injury-centered” approach. See, e.g., J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 952 (9th Cir.2010); Kutasi v. Las Virgenes Unified Sch. Dist., 494 F.3d 1162, 1163-64 (9th Cir.2007); Blanchard, 420 F.3d at 921.
Furthermore, the Seventh and Tenth Circuits have adopted “injury-centered” tests similar to the one we adopted in Robb. See, e.g., McCormick v. Waukegan Sch. Dist. No. 60, 374 F.3d 564, 568-69 (7th Cir.2004) (citing Robb, 308 F.3d at 1054, and holding that exhaustion can only be avoided “if the plaintiff has alleged injuries that cannot be redressed to any degree by the IDEA’S administrative procedures and remedies” (internal quotation marks omitted)); Cudjoe v. Indep. Sch. Dist. # 12, 297 F.3d 1058, 1066 (10th Cir.2002) (“[T]he dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA’S administrative procedures and remedies. If so, exhaustion of those remedies is required.” (alteration in original) (internal quotation marks omitted)).
Other circuits have generally agreed that plaintiffs cannot evade the exhaustion requirement simply by limiting their prayer for relief to a request for damages. See, e.g., Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 64 (1st Cir.2002) (“[W]e hold that plaintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court.”); Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 917 (6th Cir.2000) (“[W]e agree with those courts that have decided that a mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary. ...”); N.B. by D.G. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir.1996) (holding that plaintiffs cannot avoid the exhaustion requirement by limiting their requested relief to money damages because otherwise, “future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant”). However, these courts have not articulated a comprehensive standard for determining when exactly the exhaustion requirement applies.
B
We now clarify and restate the proper method for resolving IDEA exhaustion cases, and we overrule Robb to the extent it is inconsistent with our decision. The IDEA’S exhaustion requirement applies to claims only to the extent that the relief actually sought by the plaintiff could have been provided by the IDEA. In other words, we reject the “injury-centered” approach developed by Robb and hold that a “relief-centered” approach more aptly reflects the meaning of the IDEA’S exhaustion requirement.
1
Relying on Robb, the panel majority focused its analysis on the question of whether the injuries suffered by D.P. more closely resembled the force-feeding and take-downs alleged in Witte or the isolated peer tutoring alleged in Robb. *875 Payne, 598 F.3d at 1127. In other words, the panel majority employed an injury-centered approach and concluded that because Payne was alleging misconduct that in theory could have been redressed by resorting to administrative remedies under the IDEA, she could not seek any redress for that misconduct in the courts until she had exhausted those administrative remedies. In a way, our approach in Robb treated § 1415(Z) as a quasi-preemption provision, requiring administrative exhaustion for any case that falls within the general “field” of educating disabled students.
For reasons we have explained, this approach is inconsistent with the IDEA’S exhaustion provision. The statute specifies that exhaustion is required “before the filing of a civil action ... seeking relief that is also available under [the IDEA].” 20 U.S.C. § 1415(Z) (emphasis added). This suggests that whether a plaintiff could have sought relief available under the IDEA is irrelevant — what matters is whether the plaintiff actually sought relief available under the IDEA. In other words, when determining whether the IDEA requires a plaintiff to exhaust, courts should start by looking at a complaint’s prayer for relief and determine whether the relief sought is also available under the IDEA. If it is not, then it is likely that § 1415(Z) does not require exhaustion in that case.
We agree with much of the approach proposed by amicus United States Department of Justice. Under a relief-centered approach, § 1415(Z) requires exhaustion in three situations. First, exhaustion is clearly required when a plaintiff seeks an IDEA remedy or its functional equivalent. For example, if a disabled student files suit under the ADA and challenges the school district’s failure to accommodate his special needs and seeks damages for the costs of a private school education, the IDEA requires exhaustion regardless of whether such a remedy is available under the ADA, or whether the IDEA is mentioned in the prayer for relief. Again, in that case the “relief ... is also available” under the IDEA, see 20 U.S.C. § 1412(a)(10), and the student must exhaust his IDEA remedies before seeking parallel relief under the ADA. Second, the IDEA requires exhaustion in cases where a plaintiff seeks prospective injunctive relief to alter an IEP or the educational placement of a disabled student. As with the previous point, § 1415(l) bars plaintiffs from seeking relief that is available to them under the IDEA, even if the plaintiffs have urged the court to craft the remedy from a different federal statute. Third, exhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a FAPE). Such claims arise under either the IDEA (if the IDEA violation is alleged directly) or its substantive standards (if a § 504 claim is premised on a violation of the IDEA), so the relief follows directly from the IDEA and is therefore “available under this subchapter.” 20 U.S.C. § 1415(Z). We think that these situations encompass cases in which “[b]oth the genesis and the manifestations of the problem are educational.” Blanchard, 420 F.3d at 921 (quoting Charlie F. v. Bd. of Educ., 98 F.3d 989, 993 (7th Cir.1996)) (alteration in original).
This approach is consistent with our understanding that the exhaustion provision is designed to “allow[ ] for the exercise of discretion and educational expertise by state and local agencies, afford[] full exploration of technical educational issues, *876 further[ ] development of a complete factual record, and promote[ ] judicial efficiency by giving ... agencies the first opportunity to correct shortcomings in their educational programs for disabled children.” Hoeft, 967 F.2d at 1303. The exhaustion requirement is intended to prevent courts from acting as ersatz school administrators and making what should be expert determinations about the best way to educate disabled students. At the same time, it is not intended to temporarily shield school officials from all liability for conduct that violates constitutional and statutory rights that exist independent of the IDEA and entitles a plaintiff to relief different from what is available under the IDEA. Our decision reflects this limited purpose of the IDEA’S exhaustion requirement.
2
The legislative history of 20 U.S.C. § 1415(i) supports our understanding of its meaning. The exhaustion provision was included as part of the Handicapped Children’s Protection Act of 1986, Pub.L. No. 99-372, § 3, and followed the Supreme Court’s decision in Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). See S.Rep. No. 99-112, at 2 (1985), 1986 U.S.C.C.A.N. 1798, 1799. In Smith, the Court held that the Education of the Handicapped Act (“EHA”) — the IDEA’S predecessor statute — served as “the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education.” 468 U.S. at 1009, 104 S.Ct. 3457. In doing so, the Court held that Congress intended to eliminate a plaintiffs ability to seek relief for that injury under 42 U.S.C. § 1983. Id. at 1012-13, 104 S.Ct. 3457. The language now codified in § 1415(i) was enacted in response to that decision. See Pub.L. No. 99-372, § 3 (1986). Congress specifically sought to “make[ ] it clear that when parents choose to file suit under another law that protects the rights of handicapped children ..., if that suit could have been filed under the EHA, then parents are required to exhaust EHA administrative remedies.” S.Rep. No. 99-112, at 15 (1985), 1986 U.S.C.C.A.N. 1798, 1805 (emphasis added). Indeed, a number of eases decided shortly after § 1415(Z) was enacted understood it to implement Congress’s will that the provision “reaffirm ... the viability of ... other statutes as separate vehicles for ensuring the rights of handicapped children.” Digre v. Roseville Schs. Indep. Dist. No. 623, 841 F.2d 245, 250 (8th Cir.1988); see also Mrs. W. v. Tirozzi, 832 F.2d 748, 754 (2d Cir.1987) (characterizing § 1415(Í) as a “nonexclusivity provision”).
3
The approach we have adopted yields a number of implications. First, because our approach emphasizes the relief sought rather than the types of injuries alleged, we find no merit to the distinction we have previously drawn between physical and non-physical injuries. See Robb, 308 F.3d at 1052. Although physical injuries might bolster a plaintiffs likelihood of success in a case, there is no reason to treat constitutional violations that do not result in physical injuries differently under the exhaustion provision. See Blanchard, 420 F.3d at 922 (holding that the IDEA does not require exhaustion when the plaintiffs “emotional distress injuries ... could not be remedied through the educational remedies available under the IDEA”).
We also hold that in cases where a plaintiff is seeking money damages, courts should not engage in the depth of speculation we conducted in Robb. In that case, we inferred that the Robbs sought money “[presumably at least in part to pay for services (such as counseling and tutoring) that will assist their daughter’s recovery of self-esteem and promote her progress in *877 school. Damages could be measured by the cost of these services. Yet the school district may be able ... to provide these services in kind under the IDEA.” Robb, 308 F.3d at 1050. We no longer think that such speculation is appropriate. Although we agree with the proposition that “a plaintiff cannot avoid the IDEA’S exhaustion requirement merely by limiting a prayer for relief to money damages,” id. at 1049, we do not think, especially in the context of motions to dismiss or summary judgment motions, that it is proper for courts to assume that money damages will be directed toward forms of relief that would be available under the IDEA.
At the same time, plaintiffs cannot avoid exhaustion through artful pleading. If the measure of a plaintiffs damages is the cost of counseling, tutoring, or private schooling — relief available under the IDEA — then the IDEA requires exhaustion. In such a case, the plaintiffs are seeking the same relief, even if they are willing to accept cash in lieu of services in kind. Accordingly, the exhaustion requirement would also apply in cases where a plaintiff is arguing that a state’s failure to provide specialized programs for disabled students violates the Equal Protection Clause of the Fourteenth Amendment and seeks damages to fund a private education (without mentioning the IDEA). It would also apply to cases in which the plaintiff requests damages to compensate for costs associated with unilaterally altering a disabled student’s educational placement, since such a request would also be “seeking relief that is also available under” the IDEA. 20 U.S.C. § 1415(2). In other words, to the extent that a request for money damages functions as a substitute for relief under the IDEA, a plaintiff cannot escape the exhaustion requirement simply by limiting her prayer for relief to such damages. However, to the extent that a plaintiff has laid out a plausible claim for damages unrelated to the deprivation of a FAPE, the IDEA does not require her to exhaust administrative remedies before seeking them in court.
Finally, we do not believe that the exhaustion requirement is triggered simply because the challenged conduct constitutes “at least ... an attempt at an educational program.” See Payne, 598 F.3d at 1127 (quoting Robb, 308 F.3d at 1052 n. 3). As amicus Department of Justice points out, whether a school official’s action is a reasonable “attempt at an educational program” may comprise the very heart of a dispute about the constitutionality of that action. Thus, for example, if a student alleges a Fourth Amendment violation, the school may answer that any search or seizure was reasonably related to the school’s educational programs; but the student is not deprived of a § 1983 remedy merely because the conduct took place in the context of educating the disabled. Particularly in contexts where courts are expected to draw inferences in favor of plaintiffs, we do not think it is appropriate to make what are essentially merits determinations in the context of evaluating the need for exhaustion. Nothing in the IDEA protects a school from non-IDEA liability simply because it was making a good-faith attempt to educate its disabled students. If the school’s conduct constituted a violation of laws other than the IDEA, a plaintiff is entitled to hold the school responsible under those other laws.
4
The National School Boards Association (“NSBA”), as amicus, suggests that our conclusion is at odds with the Supreme Court’s decision in Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), a case in which the Court construed the exhaustion requirement in the PLRA, 42 U.S.C. § 1997e(a). Indeed, Booth’s language factored “strongly” in Robb’s *878 conclusion, since we noted in that case that “[t]he PLRA’s exhaustion requirement is framed in language similar to the IDEA’S.” Robb, 308 F.3d at 1050-51 (comparing “administrative remedies ... available” under the PLRA, 42 U.S.C. § 1997e(a), to “relief that is also available” under the IDEA, 20 U.S.C. § 1415(i)). In Booth, the Court concluded that the PLRA “mandate[s] exhaustion ... regardless of the relief offered through administrative procedures.” 532 U.S. at 741, 121 S.Ct. 1819. We held in Robb that, applied to the IDEA, this language meant that “a plaintiff must exhaust a mandatory administrative process even if the precise form of relief sought is not available in the administrative venue.” 308 F.3d at 1051. This wording suggests that even if a plaintiff has available non-IDEA forms of relief in addition to potential relief under the IDEA, the plaintiff must exhaust administrative remedies before pursuing any of them. While this conclusion was correct in Booth, there are important differences between the PLRA and the IDEA, and Robb incorrectly applied the same conclusion to the IDEA. The PLRA’s exhaustion requirement specifies that “[n]o action shall be brought ... until such administrative remedies as are available are exhausted.” 42 U.S.C. § 1997e(a) (emphasis added). The language is unequivocal and makes no reference to parallel forms of relief. Booth sensibly interpreted the prohibition on bringing an action to mean that the PLRA restricted unexhausted prisoner litigation altogether. By contrast, the IDEA’S exhaustion provision applies only to “the filing of a civil action ... seeking relief that is also available under [the IDEA]”; otherwise, the IDEA does not “restrict or limit the rights, procedures, and remedies” available under § 1983, the ADA, the Rehabilitation Act, or other federal laws. 20 U.S.C. § 1415(i). The difference between these two statutes is critical — unlike the PLRA, the IDEA requires exhaustion only from plaintiffs who are pursuing non-IDEA claims that compel the same forms of relief as the IDEA.
The NSBA also appeals to the inevitability of parent-school disputes and argues that “[r]elaxing the IDEA’S administrative exhaustion requirement does violence” to Congress’s goal of expediting the resolution of these disputes. We are mindful of “the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts.” McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The general rule is a salutary one allowing agencies to exercise their expertise, to correct their own errors, and to provide relief that may be both swifter and more satisfactory than relief available through more formal litigation. Even where the parties ultimately file suit in federal court after exhausting their administrative remedies, we may benefit from a process that has developed the factual record and narrowed the issues contested by the parties.
The reasons for administrative exhaustion do not change the fact that the IDEA’S exhaustion requirement is not as broad as the NSBA urges. Moreover, the NSBA’s reading would actually place disabled students in a disadvantaged position relative to students without special needs. As Payne accurately notes, a student who had no disability — and therefore had no need for an IEP — would be able to challenge the constitutionality of his teacher’s confinement procedures without first resorting to administrative procedures. The student could simply advance a § 1983 claim alleging violations of his constitutional rights. No exhaustion would be required. If a disabled student would be able to make out a similarly meritorious constitutional claim — one that need not reference his disability at all — it is odd to suggest that the IDEA would impose addi *879 tional qualifications to sue, simply because he had a disability.
C
We have carefully examined the criticism raised by the dissent and, with respect, do not think such criticism alters our views.
1
The dissent argues that our approach “largely nullifies § 1415(Z) by providing plaintiffs with an easy end-run around the exhaustion requirement,” because exhaustion would not be required “[s]o long as a complaint which seeks monetary damages does not mention a specific provision of the IDEA, or demand a remedy specifically provided by it.” Dissenting Op. at 890. Nothing in our analysis “nullifies” § 1415(Z). If a plaintiff does not seek relief based on an IDEA right, and does not seek a remedy provided by the IDEA, then she is not bound by the IDEA’S prerequisites for litigation. This does not “nullif[y] § 1415(Z)” — it simply limits the provision to its intended scope.
Indeed, the dissent seems particularly concerned with the fact that our approach “elevates the form of plaintiffs’ pleadings over their substance,” Dissenting Op. at 890,[5] and facilitates “gamesmanship,” Dissenting Op. at 886-87. But this worry is misplaced. In each case where a defendant raises § 1415(Z) as a complete or partial defense, two possibilities arise. First, a court might decide that a complaint states a facially meritorious claim that does not either rely on rights created by the IDEA or seek remedies available under the IDEA. If a complaint can stand on its own without reference to the IDEA, it is difficult to see why the IDEA should compel its dismissal. It is hardly an “nullification of the congressionally mandated exhaustion requirement,” Dissenting Op. at 886, to say that a complaint that presents sound claims wholly apart from the IDEA need not comport with the IDEA’S requirements. Even though such a case might “subject school districts to civil liability for money damages, without first giving school districts the opportunity to remedy the plaintiffs injuries under the IDEA,” Dissenting Op. at 886, this will only be because some other governing law authorizes such liability. The dissent’s suggestion that this constitutes “gamesmanship” is puzzling. The fact that the plaintiff could have added IDEA claims to an otherwise sound complaint (and thus subjected themselves to the exhaustion requirement), but chose not to, should not detract from the viability of that complaint.
Of course, a plaintiff might try to evade the exhaustion requirement by relying on “artful” allegations. This is the situation the dissent appears to worry most about. But our approach still requires exhaustion in these cases. For example, the dissent provides the example of “a disabled child who seeks monetary damages because a school district’s implementation of some educational program resulted in a claimed failure to adequately instruct him in reading.” Dissenting Op. at 890. The dissent interprets our opinion as allowing such a claim to proceed without exhaustion so long as the complaint “does not mention a specific provision of the IDEA.” Dissenting *880 Op. at 890. But where the claim arises only as a result of a denial of a FAPE, whether under the IDEA or the Rehabilitation Act, exhaustion is clearly required no matter how the claim is pled. To use the dissent’s example, a claim for failure to adequately instruct a student in reading can arise only under the IDEA because there is no other federal cause of action for such a claim. See Plyler v. Doe, 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (finding no enforceable federal constitutional right to a public education); cf. Blanchard v. Morton Sch. Dist., 509 F.3d 934, 938 (9th Cir.2007) (holding that § 1983 does not authorize suits for IDEA violations). The claim asserted here — for knowing and intentional infliction of excessive force — is cognizable under the Fourth Amendment and exists separate and apart from the denial of a FAPE, irrespective of the fact that the alleged excessive punishment took place in a special education classroom. See, e.g., Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1181-82 (9th Cir.2007) (holding that clearly established law under the Fourth Amendment prohibits “excessive physical abuse of schoolchildren”); Doe ex rel. Doe v. Haw. Dept. of Educ., 334 F.3d 906, 909 (9th Cir.2003). Although we would not doubt, for example, that an unconstitutional beating might interfere with a student enjoying the fruits of a FAPE, the resulting excessive force claim is not, for that reason alone, a claim that must be brought under the IDEA.
2
The dissent nonetheless contends that § 1415(i) requires exhaustion whenever the IDEA’S administrative procedures “may lead to the provision of curative or palliative ‘related services.’ ” Dissenting Op. at 888. Here, for example, the dissent suggests that the school district could have provided “intensive individualized tutoring” or “[psychological counseling” to correct both the past and ongoing aftereffects suffered by D.P. as a result of Coy’s use of the isolation room. Dissenting Op. at 888. The dissent therefore concludes that because Payne is seeking damages “for the past and ongoing academic and psychological aftereffects of D.P.’s claimed mistreatment of the school district,” exhaustion is required. Dissenting Op. at 889 (emphasis omitted).
This approach misreads § 1415(i) and is at odds with Witte. First, it is not clear that the IDEA actually authorizes relief designed to correct the effects of misconduct by the school. The dissent suggests that “the ‘related services’ provided under the IDEA — academic services, psychological counseling and therapy — may cure, alleviate, or mitigate [injuries caused by a school district’s wrongful act or omission].” Dissenting Op. at 888. But the IDEA defines “related services” to include “transportation, and such developmental, corrective, and other supportive services ... as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.” 20 U.S.C. § 1401(26)(A) (emphasis added). In other words, it is far from clear that the IDEA authorizes the provision of services designed to correct injuries caused by the school’s past violation of other laws.
Furthermore, even if such services are available under the IDEA, the dissent’s proposal is plainly too broad. For example, the student in Witte could plausibly have received some psychological counseling and therapy that might have corrected or mitigated some of the harms resulting from the abuse he suffered at school. See Witte, 197 F.3d at 1272-73. Under the dissent’s view, the fact that Witte sought remedies only for physical injuries without seeking relief under the IDEA could easily *881 be characterized as “gamesmanship” that should be set aside in favor of the exhaustion requirement. The dissent’s approach would necessarily require such speculation, even in fact patterns identical to the one in Witte. The dissent would hold that if psychological counseling could correct a student’s injuries, then exhaustion is required even if the injuries were caused by a non-IDEA violation for which federal law authorizes remedies apart from the IDEA.
We think such an approach would be mistaken. If a plaintiff can identify a school district’s violation of federal laws other than the IDEA and can point to an authorized remedy for that violation unavailable under the IDEA, then there is no reason to require exhaustion under § 1415(l). The dissent’s approach would effectively refashion § 1415(Z) from a provision designed to facilitate the coexistence of the IDEA with other forms of relief into one designed to preempt all cases involving the mistreatment of disabled students by a school. We do not think that the IDEA’S exhaustion requirement was intended to penalize disabled students for their disability. This is not what § 1415(Z) says, and we think it is not what Congress intended.
IV
A
We now apply our approach to Payne’s case and supply instructions for the district court. Payne alleged several § 1983 claims, as well as Washington state tort actions for negligence and outrage. The district court did not specifically address each claim and explain why exhaustion was required for each. Relying on Robb, it simply stated that “because plaintiffs’ injuries could be remedie[d] to some degree by the IDEA’S administrative procedures and remedies, the plaintiffs must exhaust those administrative remedies before filing suit.” However, in light of the new standards announced in this decision, the district court on remand should permit Payne to amend her complaint in order to flesh out her specific claims and enable the court to determine which claims require IDEA exhaustion and which do not.
The district court should then provide the defendants with an opportunity to seek dismissal of some or all of Payne’s claims on the ground that they require administrative exhaustion. The district court need not wait to consider the applicability of the exhaustion requirement until the record is complete and a motion for summary judgment has been filed. We have previously held that a non-jurisdictional exhaustion requirement can be cited defensively “as a matter in abatement, ... subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment.” Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.2003) (collecting eases). This is because, as a general matter, “summary judgment is on the merits, whereas dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits.” Id. Unlike a judgment on the merits, a plaintiffs failure to exhaust administrative remedies should result in a dismissal without prejudice. See City of Oakland, Cal. v. Hotels.com LP, 572 F.3d 958, 962 (9th Cir.2009). Generally, in entertaining an unenumerated motion to dismiss, “the court may look beyond the pleadings and decide disputed issues of fact.” Wyatt, 315 F.3d at 1120. We see little reason to depart from this rationale in the context of the IDEA. The defendants should be permitted to challenge Payne’s claims under the exhaustion provision in an unenumerated motion to dismiss, in the context of which the court may decide disputed issues of fact to the extent they are necessary to deciding whether her claims require exhaustion and, if so, whether she has adequately exhausted available administrative remedies.
*882 Because § 1415(Z) focuses on the “relief’ sought in an action,[6] it is conceivable that a district court, in entertaining a motion to dismiss, might not initially conclude that exhaustion is required for certain claims, but might recognize subsequently that, in fact, the remedies being sought by a plaintiff could have been provided by the IDEA. In such a case, we think the defendants should be permitted to provide evidence showing that the relief being sought by that plaintiff was, in fact, available under the IDEA. Because the line between damages available under other remedial sources and relief available under the IDEA is less than clear, the finder of fact should, in assessing remedies, be permitted to assess the evidence and withhold those that are unexhausted and available under the IDEA.
We recognize that this approach to exhaustion is somewhat unconventional — it is anomalous to permit a party to raise failure to exhaust as a defense in both a motion to dismiss and at the fact-finding stage of a proceeding. But as we have noted, § 1415(Z) is itself an anomalous provision, since it does not categorically preclude claims and instead requires a court to examine the relief being sought by those claims and to compare it to the relief available under the IDEA. Ultimately, § 1415(Z) is designed to channel requests for a FAPE (and its incidents) through IDEA-prescribed procedures. The procedure we have outlined, while somewhat unusual, faithfully executes Congress’s design.
B
After Payne is given the opportunity to amend her complaint, the district court should examine each of Payne’s requests for relief and determine whether the exhaustion requirement applies to each. It may then dismiss any claims that are governed by the exhaustion requirement, but it should not dismiss any remaining claims.[7] To provide additional guidance concerning the new approach we have *883 adopted, we briefly discuss some of Payne’s federal claims in her current complaint and the relief sought. We reiterate, of course, that the district court should permit Payne to amend her complaint before determining which aspects are barred by the exhaustion requirement.
The easiest claim to address is Payne’s claim that the defendants violated D.P.’s “statutory rights under the IDEA.” This claim is plainly barred by § 1415(i) because any relief that Payne could obtain for violations of the IDEA is “relief that is also available under [the IDEA]” itself. Section 1415(l) is explicit that Payne must exhaust her IDEA remedies “to the same extent as would be required had the action been brought under [the IDEA].”
With respect to the remaining § 1983 claims — alleged violations of the Fourth, Eighth, and Fourteenth Amendments — the complaint does not explicitly link each constitutional claim to a form of requested relief. Rather, the complaint seeks declaratory relief and general, special, and punitive damages. Accordingly, it will be the task of the district court on remand to determine whether the relief being sought is “also available under” the IDEA. For example, Payne’s request for “general damages for extreme mental suffering and emotional distress” would not fall within the purview of § 1415(l) if such damages are intended to compensate Payne for injuries resulting from Fourth or Eighth Amendment violations committed by school officials. Cf. Blanchard, 420 F.3d at 922 (holding that a request for damages for “emotional distress injuries” did not require exhaustion because they “could not be remedied through the educational remedies available under the IDEA”). If, however, the “emotional distress” stems from Payne’s concern that D.P. was not receiving an adequate education, then exhaustion is required.
To take a second example, the complaint alleges violations of “procedural and substantive due process” under the Fourteenth Amendment. If Payne seeks damages for the school district’s failure to provide procedural due process for rights conferred by the IDEA, the claims must be exhausted because the IDEA provides procedural due process rights, 20 U.S.C. § 1415(f) — (g), and Payne cannot simply claim damages in place of the process available to her. Similarly, we cannot discern the contours of Payne’s current substantive due process claim, but if, for example, the claim is for deprivation of a “free and appropriate education,” see 20 U.S.C. § 1412(a)(1)(A), then Payne seeks relief that is also available under the IDEA, and she must exhaust her statutory remedies.[8]
Finally, we emphasize that our holding only removes certain procedural barriers preventing Payne from litigating her non-IDEA claims. We have not been asked to, and do not, decide whether any of these claims are meritorious.
Y
We hold that 20 U.S.C. § 1415(0 gives IDEA defendants an opportunity to plead *884 non-exhaustion as an affirmative defense without limiting federal jurisdiction. We affirm the district court’s dismissal of Payne’s IDEA-based claim under 42 U.S.C. § 1983. We reverse its dismissal of her other § 1983 claims and remand for reconsideration under the standards we have articulated.
Costs on appeal are awarded to Payne.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. States participating in the IDEA are required to provide students with disabilities with an IEP in furtherance of the statute’s goal of providing each such student with a “free appropriate public education.” 20 U.S.C. § 1412(a)(1)(A), (a)(4). The IEP must meet a number of requirements, articulated in 20 U.S.C. § 1436(d).

. The PLRA exhaustion provision reads:
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
42 U.S.C. § 1997e(a).

. Notably, it is no longer clear that there is a circuit split on this issue. In A.W. v. Jersey City Pub. Schs., 486 F.3d 791 (3d Cir.2007) (en banc), the Third Circuit did not merely backtrack from its position that an IDEA claim need not be exhausted if the plaintiff only sought money damages; it went further and concluded that IDEA rights could not be vindicated through a § 1983 suit at all. Id. at 798-99. In doing so, it overruled W.B. v. Matula, 67 F.3d 484 (3d Cir.1995), which we cited in Robb to demonstrate the circuit split.

. Judge Berzon dissented to emphasize that “the issue is whether the relief plaintiffs seek is available” under the IDEA. Robb, 308 F.3d *874 at 1056 (Berzon, J., dissenting). She expressed the view that "[¡Insofar as the plaintiffs here are seeking relief that is not educationally-oriented (here, compensation for past emotional harms) and is not present- or future-focused, they are not seeking relief available under this statute. As this court and others have made clear, damages to compensate for past pain and suffering do not fit into the model of relief available under the IDEA’S administrative remedies.” Id.

. The dissent contends that we improperly focus on the pleadings because this appeal reaches us from a grant of summary judgment, in which the district court considered the evidence presented by the parties. Dissenting Op. at 890 n. 5. However, we focus on the pleadings because initially they determine whether the plaintiff is actually "seeking relief" available under the IDEA. Whether Payne can provide evidence supporting her claim of entitlement to such relief is a separate question — one that the district court did not address (because it had no need to) in its order granting summary judgment.

. Section 1415(/)’s emphasis on the relief sought by a plaintiff makes it different from the provisions we have previously addressed. For example, in Wyatt, we interpreted the exhaustion requirement of the PLRA, which, as we have discussed, differs from § 1415(1) in that it restricts the filing of all pre-exhaustion actions — regardless of the relief sought— by prisoners. See 42 U.S.C. § 1997e(a). Likewise, Wyatt's predicate cases typically involved arbitration requirements in private contracts, which, again, restricted the filing of entire actions, regardless of the relief sought. See, e.g., Inlandboatmens Union of Pac. v. Dutra Grp., 279 F.3d 1075, 1077 (9th Cir.2002) (interpreting an agreement that required arbitration over "[a\ny dispute concerning ... wages, working conditions, or any other matters referred to in this [contract]” (emphasis added)); Ritza v. Int’l Longshoremen’s & Warehousemen’s Union, 837 F.2d 365, 367 (9th Cir.1988).

. The dissent contends that we should nonetheless affirm the district court’s grant of summary judgment (perhaps after deciding to construe it as an unenumerated motion to dismiss) because “all of the facts presented to the district court indicated the Paynes were seeking at least some relief that was 'also available’ under the IDEA.” Dissenting Op. at 894. Although we agree that "at least some” of the relief being sought by Payne does require exhaustion, we do not think this requires the court to dismiss Payne’s entire case. We see no reason to adopt such a "total exhaustion rule” similar to the one we apply in the context of habeas corpus. See Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The Supreme Court has observed that "total exhaustion” is the exception rather than the rule. See Jones, 549 U.S. at 221, 127 S.Ct. 910 (holding that the PLRA’s exhaustion requirement did not create a total exhaustion rule and noting that "[a]s a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad. [0]nly the bad claims are dismissed; the complaint as a whole is not. If Congress meant to depart from this norm, we would expect some indication of that, and we find none.” (alteration *883 in original) (internal quotation marks omitted)).
Additionally, because we articulate a new standard today, it is appropriate to remand the case to the district court to apply that standard. On remand, the district court should allow the parties to amend their pleadings and take any other steps necessary to apply this new approach.

. We have no occasion here to opine on the existence or scope of such a right, but even if there is such a right, Congress may require administrative exhaustion of constitutional claims. See United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 9, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008); Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 773-74, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947).