EVERETT H, a minor, by and through his Guardians Ad Litem Rebecca HAVEY and Heath Havey; Rebecca Havey, an individual; and Heath Havey, an individual, Plaintiffs,

v.

DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT, Board of Trustees of Dry Creek Joint Elementary School District; Mark Geyer, individually and in his official capacity of Superintendent of Dry Creek Joint Elementary School District; Evonne Rogers, individually in her official capacity as Assistant Superintendent of Educational Services; Lynn Barbaria, individually and in her official capacity as Director of Special Education; Andrew Giannini, individually and in his official capacity as Principal at Olive Grove Elementary School; California Department of Education; and Tom Torlakson, individually and in his official capacity as State Superintendent of Public Instruction for the State of California, Defendants.

No. 2:13–cv–00889–MCE–DAD.

United States District Court, E.D. California.

Signed March 25, 2014.

Filed March 26, 2014.

Heath A. Havey, Sacramento, CA, for Plaintiffs.

Sloan Robert Simmons, Marcella L. Gutierrez, Lozano Smith, Leonard Bruce

Garfinkel, California Department of Education, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

MORRISON C. ENGLAND JR., Chief Judge.

Through the present action, Plaintiffs Heath and Rebecca Havey, both individually and on behalf of their son Everett H. (hereinafter "Plaintiffs" unless otherwise indicated) allege educational harms based on purported violations of Everett's right as a disabled student to a free and appropriate public education ("FAPE") pursuant to the provisions of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 et seq. ("IDEA") and various state statutes. Plaintiffs also assert associated violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504"). Finally, Plaintiffs assert claims under the auspices of 42 U.S.C. § 1983 ("§ 1983"), which include both failure to accommodate claims and claims for civil rights discrimination and retaliation. By way of damages, Plaintiffs seek compensatory education and reimbursement, compensatory and punitive damages, and attorneys' fees.

The Dry Creek Joint Elementary School District, Everett's local school district, is named as a Defendant by Plaintiffs, along with Dry Creek's Board of Trustees and four individual Dry Creek administrators, Lynn Barbaria, Mark Geyer, Andrew Giannini and Evonne Rogers in their official capacities. (These Defendants will be collectively referred to as the "Local Defendants" unless otherwise specified). In addition to the Local Defendants, the California Department of Education (the "CDE") and State Superintendent of Public Instruction Tom Torlakson are also named Defendants in the instant lawsuit (the "State Defendants").

Both the Local and State Defendants have now moved to dismiss Plaintiffs' Complaint. This Memorandum and Order will address only the State Defendants' Motion to Dismiss (ECF No. 18), which is brought as both under Federal Rule of Civil Procedure 12(b)(6) and as an unenumerated 12(b) motion. As set forth below, that Motion will be granted in part and denied in part.[1]

## STATUTORY AND PROCEDURAL FRAMEWORK

The procedural and substantive standards for educating disabled students in this state are delineated within the federal IDEA and California's Education Code § 56000, et seq., along with state and federal implementing regulations. *See* 34 C.F.R. § 300.1 et seq.; Cal.Code Regs., tit. 5, § 3000 et seq.

The IDEA provides that a state must, in order to receive federal financial assistance, have policies and procedures in effect that assure all students with disabilities the right to a FAPE. 20 U.S.C. § 1412(a)(1). The FAPE requirement means that special education and related services must be provided at public expense, under public supervision and direction, and without charge to the parent or student. 20 U.S.C. §§ 1401(9) and (29). Each student's special instruction is based upon the development of an Individualized Education Plan ("IEP") by the school district which, along with parental input, is designed to establish both annual and short term objectives and individually de-

---

1. Because oral argument was not deemed of material assistance, this matter was submitted on the briefing. E.D. Cal. Local Rule 230(g). The Court also notes that both sides have requested that the Court judicially notice certain documents pursuant to Federal Rule of Evidence 201. Neither party has objected to those requests and they are granted.

signed instruction and services that will enable the child to meet those objectives. 20 U.S.C. § 1414(d); *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Under the IDEA, the CDE, as the so-called state educational agency ("SEA"), has general supervisory responsibility for the overall provision of special education services within California. 20 U.S.C. §§ 1412(a)(11)(A); 1401(32). The IDEA contemplates that each individual state will devise its own systems for providing special education services through local educational agencies ("LEAs"). 20 U.S.C. § 1401(19). LEAs apply for SEA funding by submitting a plan that ensures compliance with the IDEA. 20 U.S.C. § 1413(a). The SEA can choose, but is not required, to be a direct provider for some of whatever services may be necessary. 20 U.S.C. § 1412(b).

California elected to participate in IDEA by adopting a state plan and enacting a series of statutes and regulations designed to comply with the federal requirements. Cal. Educ.Code § 56000 et seq., Cal.Code Regs. tit. 5, § 3000 et seq. California law places primary responsibility for the provision of FAPE to eligible students on the LEA, which is defined as a "school district, a county office of education, a charter school participating as a member of a special education local plan area, or a special education local plan area." Cal. Educ. Code § 56026.3. An LEA, like Dry Creek in this instance, is generally responsible for providing the requisite FAPE to students within its jurisdictional boundaries. Cal. Educ.Code § 48200. That obligation includes both identifying students with disabilities, determining appropriate educational placements and related services through the IEP process, and providing those needed special education and related services. Cal. Educ.Code §§ 56300, 45302, 56340, 56344(c).

Where, as here, a dispute arises regarding a disabled student's education needs, federal and California law provides two distinct procedural mechanisms by which an LEA's educational decisions may be challenged. First, either the LEA or the parents can request an administrative "due process" hearing. 20 U.S.C. § 1415(b)(6)(A); (f)(1)(a); 34 C.F.R. § 300.507(a); Cal. Educ.Code § 56501(a), et seq.; *Wyner v. Manhattan Beach Unified Sch. Dist.,* 223 F.3d 1026, 1028–29 (9th Cir.2000); *cert. denied.,* 534 U.S. 1140, 122 S.Ct. 1091, 151 L.Ed.2d 990 (2002). Because under the IDEA the entity conducting the due process hearing must be impartial and independent from the CDE (20 U.S.C. § 1415(f)(1)(A); (f)(3)(A)), the CDE meets this obligation in California by contracting with the Office of Administration Hearings ("OAH") for the services of Administrative Law Judges ("ALJs") to preside over due process hearings. Cal. Educ.Code § 56504.5(a); Cal. Gov't Code § 27727. Those hearings are formal in nature and include, *inter alia,* the right to present evidence and arguments, the right to confront and cross-examine witnesses and to compel their attendance, and the right to obtain written findings of fact by the ALJ following the hearing. 20 U.S.C. § 1415(h); Cal. Educ.Code § 56505(e). The resulting OAH ruling is deemed a final administrative decision. 20 U.S.C. § 1415(i)(1)(A); Cal. Educ.Code § 56505(h). Either the parents or the LEA, if "aggrieved" by the final administrative decision, may seek de novo judicial review in a court of competent jurisdiction like this one. 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.516; Cal. Educ.Code § 56505(k). The remedy represented by the administrative due process hearing must be exhausted before filing a civil action in federal court. 20 U.S.C. § 1415(1).

In addition to the formal due process hearing procedures outlined above, parents may also initiate a more informal, and less adversarial, complaint resolution proceeding ("CRP") with an SEA, which, as stated above, is the CDE here in California. 34 C.F.R. §§ 300.151–153; Cal. Educ.Code § 56500.2; Cal.Code Regs., tit. 5, § 4650. Unlike the due process hearings process that is both expressly provided in the IDEA and detailed in the regulations, the CRP is described only in the federal regulations. *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1026 (9th Cir.2000).

A CRP and the due process hearing substantially differ. Unlike the IDEA, which is limited to the identification, evaluation, placement and provision of FAPE, a CRP can contain any allegation that the LEA violated the IDEA or its implementing regulations. 34 C.F.R. 300.153(b)(1); Cal. Educ.Code § 56500.2(c)(1); Cal.Code Regs. tit. 5, § 4650(a)(7)(E). Additionally, unlike a due process hearing request, a CRP can be initiated by any individual or organization, cannot be initiated by an LEA against a parent, and need not involve an allegation regarding a specific student. 34 C.F.R. §§ 300.153(a); (b)(4); Cal.Code Regs. tit. 5, § 4600(c). Additionally, the nature of the proceedings differs to the extent that the CRP does not include full procedural protections like the right to confront and cross-examine witnesses.

When a party files a CRP in California, the CDE must investigate, request all documentation and other evidence relating to the allegations and issue an investigation report. Cal. Educ.Code § 56043(p); Cal. Code Regs. tit. 5, §§ 4663–64. A parent or LEA can initiate a due process hearing even when a CRP is still pending so long as the issues in the due process request are timely, involve the identification, evaluation, placement or provision of FAPE and are accordingly within the jurisdiction of the OAH in California. *See* 20 U.S.C. § 1415(b)(6)(A); (f); Cal Educ.Code § 56501(a).

## FACTUAL BACKGROUND [2]

Everett H. is a disabled student who, according to the Complaint, suffered from delayed myelination and has been diagnosed with an autism spectrum disorder and resulting motor and neurological delays such as language impairment. Everett attended school within the Dry Creek Elementary School District ("Dry Creek") for approximately five years, from 2007 to March 2, 2012. During that period, Plaintiffs and Dry Creek had disagreements about the special education program provided by the District to Everett. According to Plaintiffs, Dry Creek made various errors with respect to the provision of FAPE, including in the IEP process, Everett's disability designation placement and providing education to Everett in the least restrictive environment ("LRE").

Plaintiffs allege that in order to shoehorn Everett into its special education agenda, Dry Creek intentionally misrepresented its testing as showing that he was "mentally retarded" in order to remove Everett from a general education classroom into a segregated classroom where severely handicapped children were warehoused and where little education purportedly took place. According to Plaintiffs, beginning in 2010, they resisted Dry Creek's attempt to provide fewer services than contemplated within Everett's IEP dated September 9, 2009. Specifically, Plaintiffs claim that the district withheld some 290 minutes of daily Specialized Aca-

---

**2.** The allegations in this section are derived from the assertions made by Plaintiffs in their Complaint.

demic Services required under the IEP and failed to rectify that shortcoming even after Plaintiffs demanded that the services called for under the IEP be provided.

Dry Creek eventually, on September 12, 2011, filed for a special education due process hearing before the OAH with regard to FAPE and assessment issues.

According to Plaintiffs, once they began advocating for Everett's rights in the summer of 2010, the District began to engage in retaliatory activity which intensified in March of 2012, when Plaintiffs claim they had to remove Everett from school for his own safety. Plaintiffs assert that the District began delaying the IEP meeting process, began misrepresenting what occurred at IEP meetings when they did take place, and began manipulating IEP documentation to delay and mislead Plaintiffs. In addition, Plaintiffs assert that Dry Creek engaged in retaliatory behavior that endangered Everett's safety, including depriving him of food and refusing to monitor his food intake, sending him home disheveled and dirty with feces, and otherwise subjecting Everett to repeated humiliation. Plaintiffs further claim that Dry Creek interfered with Plaintiff's attempt to move Everett to another school district.

Between January and October of 2012, when the due process hearing between Plaintiffs and Dry Creek was pending at the OAH, and for a short time thereafter, Plaintiffs filed at least five CRPs against Dry Creek with the CDE which alleged that Cry Creek was out of compliance with special educations laws. Plaintiffs claim that the CDE found Dry Creek out of compliance with state and federal laws in both Everett's case and others, and issued a report that Dry Creek was in "systemic non-compliance." On July 25, 2012, several months after Everett left Dry Creek, the District dismissed the OAH case it had initiated. Given that dismissal, no final administrative due process hearing deci-

sion was ever issued on any of the alleged education shortcomings raised by Plaintiffs.

Plaintiffs alleged that Administrative Law Judge ("ALJ") assigned to the case made errors. They also claim the CDE itself made various errors in handling the CRPs, including, among other claimed mistakes, declining to address and/or investigate some of Plaintiffs' allegations and denying requests for reconsideration.

## STANDARD

### A. Rule 12(b)

In the context of alleged IDEA-related violations, failure to exhaust administrative remedies may subject a complaint to an unenumerated 12(b) motion to dismiss. *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 881 (9th Cir.2011). An unenumerated 12(b) motion may go beyond the pleadings and decide disputed issues of fact. *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir.2003). Such a motion therefore utilizes "a procedure closely analogous to summary judgment." *Id.* at 1119 n. 14.

### B. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A com-

plaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216 (3d ed.2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n. 3, 127 S.Ct. 1955 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 Charles Alan Wright & Arthur R. Miller, *supra*, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556, 127 S.Ct. 1955 (quoting *Scheuer*

*v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment. . . ." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." *Id.* (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir.1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir.2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir.2005); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility. . . .")).

## ANALYSIS

### A. Administrative Exhaustion as a Prerequisite to Plaintiffs' Claims

By their own admission, State Defendants' "central contention" underlying this motion rests with the argument that Plaintiffs' claims must be dismissed due to their alleged failure to exhaust administrative remedies. Defs. Reply, 1:22–25. State Defendants allege that Plaintiffs' suit is barred in its entirety because of that failure. Since Plaintiffs seek alleged IDEA

remedies in the form of compensatory education, the State Defendants assert that as a prerequisite to this civil action, Plaintiffs had to pursue a due process hearing with Dry Creek, as the applicable LEA, to completion.

■ Exhaustion of available administrative remedies is required before filing a civil suit seeking relief that is also available under the IDEA. 20 U.S.C. § 1415(*l*). State Defendants point to the Ninth Circuit's recent decision in *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, for the proposition that Plaintiffs' claims are both unexhausted and subject to dismissal at this juncture. Defendants correctly cite *Payne* for the proposition that exhaustion is required: 1) when a plaintiff seeks an IDEA remedy or its functional equivalent; 2) where a plaintiff seeks prospective injunctive relief to alter an IEP or the educational placement of a disabled student; and 3) where a plaintiff is seeking to enforce rights that arise as a result of a denial of FAPE, whether pled as an IDEA claim or otherwise. 653 F.3d at 875. State Defendants assert that the CRPs submitted to the CDE cannot satisfy this exhaustion requirement.

■ It is not necessary at this juncture to resolve whether or not the CRPs filed by Plaintiff sufficed for exhaustion purposes. As a preliminary matter, *Payne* makes it clear that exhaustion is not in fact a jurisdictional issue amenable to disposition by the present motion. First, with respect to the exhaustion provisions of the IDEA enumerated at 20 U.S.C. § 1415(*l*), the Ninth Circuit observes that "nothing [in that statute] mentions the jurisdiction of the federal courts." *Id.* at 869. The *Payne* court goes on to find nothing in the relevant jurisdictional statutes requiring exhaustion either. *Id.* at 870. Conse-

quently, *Payne* held the exhaustion requirement to be not jurisdictional: "It is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions." *Id.* at 870–71. The court therefore held that "the IDEA's exhaustion requirement is a claims processing provision that IDEA defendants may offer as an affirmative defense." *Id.* at 867. Joining the approach adopted by the Seventh and Eleventh Circuit, and overruling any statements to the contrary contained in its earlier decisions,[3] *Payne* therefore adopted an exhaustion requirement "more flexible" than any "rigid jurisdictional limitation." It noted that while dismissal may still be had on exhaustion grounds, any assessment in that regard is "better addressed through a fact-specific assessment of the affirmative defense than through an inquiry about whether the court has the power to decide the case at all." *Id.* at 870.

That reasoning is consistent with *Payne's* recognition that previous Ninth Circuit precedent directs that non jurisdictional exhaustion deficiencies, like those alleged here, are subject to an unenumerated motion to dismiss under Rule 12(b). *Id.* at 881, citing *Wyatt v. Terhune*, 315 F.3d at 1119 (collecting cases). Unlike the present motion, however, which is directed solely to the pleadings, an unenumerated motion to dismiss looks beyond the complaint and may decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119–20. In that sense, a Rule 12(b) motion utilizes "a procedure closely analogous to summary judgment." *Id.* at 1119 n. 14.

The need to resolve factual issues here is highlighted by the fact that Plaintiffs claim that various exceptions apply to ex-

**3.** *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 920–21 (9th Cir.2005); *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1274 (9th Cir.1999); and *Dreher v. Amphitheater Unified Sch. Dist.*, 22 F.3d 228, 231 (9th Cir.1994) are cited in that regard.

cuse any argument premised on failure to exhaust. Two principal exceptions have been recognized by the case law. First, exhaustion may be excused where resort to administrative remedies would be futile. Second, if the educational agency, here the CDE, has adopted a policy or pursued a practice of general applicability that is contrary to law, exhaustion may also be excused. *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 681 (9th Cir.1997).

While both sides devote extensive argument as to whether either of these exceptions may apply to the present matter, it is abundantly clear to this Court that such contentions go well beyond the scope of the present motion. Excuse on the basis of futility, for example, involves the development of a factual record devoid in this matter, which is based solely on the allegations of the Complaint along with argument of counsel proffered by way of the points and authorities submitted in support of, and in opposition to, State Defendants' motion. The same reasoning applies equally to whether the CDE adopted any policy or practice of general applicability contrary to law. All those issues are better served by means of summary judgment and even the enumerated Rule 12(b) motion (upon which State Defendants rely) is a procedure that looks beyond the pleadings in a process closely akin to that of summary judgment. *Wyatt*, 315 F.3d at 1119. This case is not in a posture to make such determinations.

## B. Dismissal of Plaintiffs' Second and Ninth IDEA Claims for Relief

State Defendants also contend that Plaintiffs cannot bring an IDEA claim against them in the first instance, which Plaintiffs attempt to do in the Second Claim for Relief, for failure to Provide FAPE in violation of the IDEA, and the Ninth Claim for Relief asserting that State Defendants also failed to monitor, investigate and enforce the IDEA. *See* 20 U.S.C. § 1411(2)(B); 20 U.S.C. § 1416; 34 C.F.R. § 300.601. In making that contention, State Defendants claim that the CRPs filed by Plaintiffs with the SDE cannot suffice for purposes of exhaustion.

■ State Defendants' argument fails. This Court cannot determine as a matter of law based on the information before it that the CRPs presented by Plaintiffs were inadequate for exhaustion purposes. Plaintiffs allege in their complaint that they filed CRP complaints against the CDE, but that the CDE refused to investigate those claims, and thereby stymied Plaintiffs' attempts to exhaust administrative remedies. Comp., 48, 134. Plaintiffs go on to allege that the filed additional complaints with both the Office of Civil Rights and the United States Department of Justice regarding both its complaints against Dry Creek and its complaints against the CDE. *Id.* at 44, 49, 54.

The Ninth Circuit has found that CRPs can suffice for exhaustion purposes under several different circumstances. In *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1028–29 (9th Cir.2000), the court found that "the CRP and the due process hearing procedure are simply alternative (or even serial) means of addressing a § 1415 complaint" and "[a]lthough different, a CRP is no less a proceeding under § 1415 than a due process hearing." Then, in *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064 (9th Cir.2002), the Ninth Circuit again confirmed that the CRP can suffice for exhaustion purposes:

> Our statement in *Hoeft* [*v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992)] that the *CRP may serve as a substitute for due process system exhaustion* is consistent with the traditional exception to exhaustion requirements based on futility or inadequacy. *See*

*Honig,* 484 U.S. at 327, 108 S.Ct. 592. Where the challenge is to a facially invalid policy, and the state refuses to alter the policy after a CRP complaint, then further exhaustion may be excused because "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy* [*v. Madigan* ], 503 U.S. [140] at 148, 112 S.Ct. 1081 [117 L.Ed.2d 291 (1992) ]. Exhaustion of a CRP may also render the due process hearing futile where all the educational issues are resolved, leaving only issues for which there is no adequate administrative remedy. *See Witte v. Clark County Sch. Dist.,* 197 F.3d 1271, 1275–76 (9th Cir. 1999). Thus, we agree with the statement in *Hoeft* that there may be instances when exhaustion of the CRP may be a substitute for exhaustion of the due process hearing.

*Id.* at 1073–74, *cert. denied,* 537 U.S. 1194, 123 S.Ct. 1303, 154 L.Ed.2d 1029 (2003) (emphasis added). *Porter* further held that because administrative hearing officers are not authorized to adjudicate questions of statutory compliance, and because such non-compliance was alleged by plaintiffs with respect to enforcement of a final order, further administrative exhaustion would have been futile. *Id.* at 1074. Significantly, too, *Porter's* reference to the instances in which exhaustion can be excused brings up the same factual determinations making the present dismissal request improper as discussed in the previous section of this Memorandum and Order.

Additionally, in their 2004 decision in *Christopher S. v. Stanislaus Cnty. Office of Educ.,* 384 F.3d 1205 (9th Cir.2004), the Ninth Circuit found the district court to have erred in dismissing for failure to exhaust remedies under the IDEA where CRP complaints had been made, and where the subject school district was out of compliance in its calculations of instruc-

tional minutes due autistic students. The *Christopher S.* court found that where systemic allegations of this kind were made, the CRP could suffice for exhaustion purposes. *Id.* at 1210–11.

Not surprisingly, State Defendants argue that these cases are factually distinguishable. According to Defendants, unlike *Christopher S.* (where the district was alleged to be out of statutory compliance in the instructional programs it offered autistic students) and *Morgan Hill* (where a parents' association brought a challenge that CDE was systematically not ensuring FAPE by complying with its monitoring, investigation and enforcement obligations under the IDEA), Plaintiffs seek no similar system-wide relief and focus their grievances on the rights of just one student, Everett. Although Everett's own rights are unquestionably being pursued, examination of the Complaint shows that additional, more far-reaching, allegations are in fact made. Paragraphs 58 through 60 make this particularly clear:

58. Plaintiffs are excused from initiating further administrative proceedings because *Plaintiffs allege systemic violations of the administrative complaint process,* the State Defendants have adopted policies and practices contrary to law, the severity of the State Defendants' violations threaten basic statutory goals, and the state policies are challenged in this action, and due process hearing officers are not authorized to adjudicate questions of statutory compliance.

59. Plaintiffs further allege that the CRP process and OAH due process is itself broken, and further pursuing those processes would be futile.

60. The State Defendants have also adopted systemic state policies contravening and in violation of the IDEA and [California Education Code] by denying

FAPE to Everett, which is a violation severe enough to threaten the basic purpose of the IDEA and [the California Education Code].

Compl., 58–60 (emphasis added).

Moreover, as detailed in pages 6 through 8 of Plaintiffs' Opposition, the Complaint specifically identifies 16 illegal policies and practices on CDE's parts, with specific factual examples related to the Plaintiffs' case. According to the Complaint, the overall policies and practices of the CDE are being challenged, and not simply those related only to a particular student, here Everett. While the Court recognizes that merely labeling claims as systemic as a way of circumventing the administrative process could make the requirement to exhaust meaningless (*see Doe,* 111 F.3d at 683), it cannot summarily discount the allegations of the Complaint at this time. Since the pleadings on their face make a case for systemic violations that, under pertinent case law, bring Plaintiffs' complaint outside individualized FAPE issues applicable to Everett alone, the Court cannot find as a matter of law that exhaustion in general is required, let alone that the CRP procedure resorted to by Plaintiffs under the circumstances was inadequate for that purpose.

On a perhaps even more fundamental level, State Defendants allege that there is no private right of action to review a CRP in the first instance. This argument is incorrect. As the court in *Morgan Hill* noted, that position "contradicts Ninth Circuit precedent that entertains parties' appeals from CRP complaints." *Morgan Hill Concerned Parents Assoc. v. California Dep't of Educ.,* 2013 WL 1326301 at *6 n. 3 (E.D.Cal.2013) (citing *Christopher S.,* 384 F.3d at 1211). Moreover, it bears noting that Plaintiffs assert this matter should not be deemed an appeal at all, since in response to their CRP complaints, the CDE refused to investigate itself, contrary to federal law. This confers, according to Plaintiffs, original jurisdiction against the CDE based on its non-compliant policies and practices, including its failure to investigate itself through the CRP process. Under either scenario, exhaustion would not be required under its recognized exceptions, including the futility and contrary to law doctrines.

In sum, because the Court concludes that Plaintiffs have stated viable IDEA claims against the State Defendants under the circumstances of this case, their dismissal request as to the Second and Ninth Claims for Relief is denied.

## C. Dismissal of Seventh and Eighth Claims for Relief for Failure to State a Claim under § 504

Plaintiffs' Seventh and Eighth Claims for Relief both assert violations of § 504 of the Rehabilitation Act. Section 504 forbids public schools from discriminating against students solely by reason of a disability. 29 U.S.C. § 794(a), (b)(2)(b); 34 C.F.R. § 104.4. Intentional discrimination, which requires discriminatory animus or deliberate indifference, is required. *Mark H. v. Lemahieu,* 513 F.3d 922, 938 (9th Cir. 2008). The Seventh Claim alleges that the State Defendants "have intentionally discriminated against Everett based on his disability by denying him the benefits of FAPE, by subjecting him to discrimination at school, in violation of § 504 and by refusing and failing to adopt policies, procedure, and practices, or take appropriate measures necessary to ensure that Dry Creek complies with state and federal laws." Compl., ¶ 216. The Eighth Claim is directed to Parents' rights in arguing that the State Defendants have also "intentionally discriminated against Parents based on their right to advocate for Everett in violation of Section 504 ..." *Id.* at ¶ 218. A retaliation claim under § 504

requires, in addition to knowledge of protection activity, an adverse action along with causal connection between that adverse action and the protected activity. *Alex G. v. Bd. of Trustees,* 387 F.Supp.2d 1119, 1128 (E.D.Cal.2005).

State Defendants argue that in both instances Plaintiffs must have exhausted remedies under the IDEA before bringing any § 504 claim for damages that involves an alleged denial of FAPE under either the IDEA or § 504. While State Defendants cite *Payne* for that proposition, *Payne* states only that exhaustion is required where the claim "arises *only* as a result of a denial of a FAPE, whether under the IDEA or the Rehabilitation Act." *Payne,* 653 F.3d at 880 (emphasis added). As discussed at length above, and as equally applicable here, *Payne* does not state that exhaustion is jurisdictional in nature, nor can be determined absent factual determinations in a procedure analogous to that employed in assessing the propriety of summary judgment. Nor does *Payne* state that *any* claim touching on IDEA issues must be exhausted; it recognizes that IDEA exhaustion "does not encompass every challenge concerning a school's treatment of a disabled student," and in particular "does not apply to plaintiffs who claimed that school officials had inflicted physical and emotional abuse on their child ..." *Id.* at 872–73. Since such allegations are indeed made here, State Defendants' exhaustion argument as to Plaintiffs' § 504 claims is unavailing.

State Defendants go on to argue that Plaintiffs have not pled enough facts against them to state a viable § 504 claim in any event. The gist of State Defendants' argument is that Plaintiffs have pled no facts that they, as opposed to the Local Defendants, either denied Everett meaningful access to any service or program as a result of his disability, or did so with any discriminatory animus or deliberate indif-

ference so as to state a cognizable claim under the Rehabilitation Act. State Defendants further claim a dearth of any specific allegations against them in the retaliation allegations set forth in the Eighth Claim. Again, however, the Complaint identified at least 16 alleged instances of discriminatory conduct and retaliation by the State Defendants, as enumerated in pages 6–8 of Plaintiffs' complaint. Those allegations include refusing to provide documents to Plaintiffs as required by law, summarily dismissing requests for reconsideration without considering the evidence submitted, and making various misrepresentations of fact and law to Plaintiffs. Those allegations are enough to survive a motion to dismiss. Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief"; is does not require each and every relevant fact to be included within the complaint. The State Defendants' Motion to Dismiss the Seventh and Eighth Claims for Relief is denied.

**D. Dismissal of Eleventh Claim for Relief for Failure to State an ADA Claim**

Plaintiffs' Eleventh Claim seeks relief from all Defendants for violations of the ADA. Defendants concede that there is no significant difference in the analysis of rights and obligations created under § 504 and the ADA. *Vinson v. Thomas,* 288 F.3d 1145, 1152 n. 7 (9th Cir.2002). This is not surprising since the ADA, like § 504, prohibits denial of public services solely by reason of a disability. *Weinreich v. Los Angeles Cnty. Metropolitan Transp. Authority,* 114 F.3d 976, 978 (9th Cir.1997).

In moving to dismiss the Eleventh Claim, Plaintiffs rely on the same arguments posited above with respect to § 504. They contend both that the ADA claim, along with Plaintiffs' § 504 claims, should

be dismissed for failure to exhaust administrative remedies and for failure to state a viable claim. Those arguments fail for the same reasons outlined above with respect to § 504.

### E. Dismissal of Twelfth Claim for Relief under 42 U.S.C. § 1983

Plaintiffs' Twelfth Claim for Relief is a cause of action against State Defendant Tom Torlakson, California's State Superintendent of Public Instruction, in his individual capacity under 42 U.S.C. § 1983 (the individually named Dry Creek administrator defendants are also named as defendants). Alleged violations of the IDEA, § 504 and the ADA are cited as support for the § 1983 claim, along with underlying constitutional claims.

A § 1983 action may be brought for federal statutory violations if "(1) Congress intended the provision to benefit the plaintiff; (2) the right is not overly 'vague and amorphous'; and (3) the statute unambiguously imposes a binding obligation on the states." *Alex G. v. Bd. of Trustees,* 332 F.Supp.2d 1315, 1317 (E.D.Cal.2004) (citing *Blessing v. Freestone,* 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)). Moreover, even if those requirements are satisfied, § 1983 will not provide an enforcement mechanism for a federal statutory right if Congress has demonstrated a contrary intent. *Id.* (citing *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353). Congress does not intend for a federal statutory right to be enforced through § 1983 if the right is part of a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*

*In Blanchard v. Morton Sch. Dist.* 504 F.3d 771 (9th Cir.2007), the Ninth Circuit joined "the First, Third, Fourth and Tenth Circuits [in holding] that the comprehensive enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim for a violation of rights under the IDEA." *Id.* at 774–75. Similarly, the Ninth Circuit has also held that Plaintiffs cannot ordinarily vindicate rights created by either § 504 or the ADA through a § 1983 action. *Vinson,* 288 F.3d at 1156.

Significantly, however, as indicated above, Plaintiffs' § 1983 case is not limited to claims based only on the above described provisions of federal law. To the contrary, Plaintiffs also assert that Torlakson, along with the other individually named defendants, "acted with bad faith and intentional disregard of Everett's right to equal protection and substantive due process guaranteed by the United States Constitution." Pls.' Compl., ¶ 241.

Additionally, as Plaintiffs point out, this is not a typical case with respect to IDEA. Plaintiffs' complaint recounts numerous alleged acts of retaliation and misrepresentation which included both physical neglect and psychological humiliation. Even though that alleged conduct may have originated in an educational setting otherwise falling within the purview of the IDEA, again the Ninth Circuit's *Payne* decision recognizes that the IDEA "does not encompass every challenge concerning a school's treatment of a disabled student," and in particular may not "apply to plaintiffs who claimed that school official had inflicted physical and emotional abuse on their child." *Payne,* 653 F.3d at 872–73. As *Payne* reasoned, the IDEA and its requirement are not intended to "shield school officials from all liability for conduct that violates constitutional and statutory rights that exist *independent* of the IDEA and entitles a plaintiff to relief *different* from what is available under the IDEA." *Id.* at 876 (emphasis in original). Similarly, in the context of alleged § 504 and ADA claims, a § 1983 action may be available under certain circumstances. *See Goleta Union Elem. Sch. Dist. v. Ordway,*

166 F.Supp.2d 1287, 1292–93 (C.D.Cal. 2001).

The problem with respect to Tom Torlakson's inclusion in the Twelfth Claim for Relief is, according to State Defendants, two-fold. Defendants first contend that only in limited circumstances does the Eleventh Amendment to the United States Constitution not bar a claim against a state officer sued in his individual capacity. Defendants then argue that the Complaint fails to state facts sufficient to find any liability against Torlakson in any event.

Defendants' reliance on the exception to Eleventh Amendment immunity granted under the so-called *Ex Parte Young* doctrine fails at the onset because the doctrine applies under limited circumstances to state officers sued in their *official* capacity. *Papasan v. Allain,* 478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Here, the Twelfth Claim is directed against Torlakson only in his *individual* capacity. Additionally, application of the *Ex Parte Young* doctrine requires in any event that the official in question have a connection with the challenged conduct in question as well as direct responsibility for preventing it. *Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That brings us to the question of just what, if any, charging allegations are levied against Torlakson himself.

■ There is no allegation in the Complaint that Defendant Torlakson had any personal role in the events underlying this lawsuit. As stated above, the Complaint states only generically that Torlakson "acted with bad faith and intentional disregard of Everett's rights" under the United States Constitution, the IDEA and the ADA. Compl, ¶ 241. Otherwise the Complaint maintains only that Torlakson "undertook to disregard the oversight and enforcement required of the CDC" and is "therefore individually responsible for the deprivation of rights and malfeasance of permitting the growth of system violations by constituent LEAs such as Dry Creek." *Id.* at ¶ 244. Supervisory liability against Torlakson is therefore claimed.

■ There is no supervisory liability under § 1983, however, absent *action* by the individual that causes a constitutional deprivation either directly, or by acquiescence through culpable indifference. *Menotti v. City of Seattle,* 409 F.3d 1113, 1149 (9th Cir.2005). Although Plaintiff attempt to assign liability to Torlakson "by virtue of his position over the CDE" (Compl., ¶ 244), Torlakson cannot be responsible under a "respondeat superior" liability under § 1983 for the claimed malfeasance of others. *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution.").

The dearth of any allegations that Torlakson participated directly in the events underlying this lawsuit makes the Twelfth Claim fatally insufficient at this time.[4] Plaintiffs request to dismiss Torlakson from that claim is therefore granted, with leave to amend.

---

**4.** Although State Defendants also claim that Torlakson is entitled to qualified immunity in any event, given the pleadings deficiencies of the Complaint the Court need not make any determination with respect to immunity at this time. The Court does note, however, that qualified immunity is not generally proper at the pleadings state of a case, as opposed to summary judgment by which time a detailed factual record would presumably have been established. *See, e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *St. George v. Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir.2002).

## F. Dismissal of Third and Tenth Claims for Relief

Plaintiffs' Third Claim for Relief seeks redress for Defendants' alleged failure to provide the supplemental instruction required by the IDEA in violation of California Education Code § 37252.2. The Tenth Claim asserts another state law claim against the State Defendants for violations of California Education Code § 56000, the California statutory scheme that implements IDEA standards in this state. The State Defendants challenge both claims on grounds that they seek compensatory damages, injunctive and declaratory relief barred by the Eleventh Amendment.

 Absent unequivocal consent to suit, the Eleventh Amendment "bars suits in federal court, for both retrospective and prospective relief brought against state officials acting in their official capacities alleging a violation of state law." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir.1992) (citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).

 State Defendants claim that they have not consented to suit in federal court relative to Plaintiffs' state law claims, and that therefore those claims are barred. It is uncontroverted, however, that states receiving federal funding under the IDEA waive sovereign immunity under 20 U.S.C. § 1403. *See* Pls.' Compl., ¶ 20; *M.A. v. State–Operated Sch. Distr. of the City of Newark*, 344 F.3d 335, 346 (3rd Cir.2003) ("One clear and unmistakable component of the IDEA is a state's waiver of Eleventh Amendment immunity."). Significantly, the CDE admits that "California elected to participate in the IDEA, adopted a state plan, and enacted a series of statutes and regulations designed to comply with the federal requirements." Opening Memo, 4:2–4. This Court therefore agrees with Plaintiffs that the CDE has waived sovereign immunity as to the California statutes it passed and which it utilizes to ensure compliance with the federal requirements of the IDEA. This conclusion is underscored by the fact that State Defendants used the IDEA federal funding to implement the California statutes themselves.

State Defendants go on to assert that even if Eleventh Amendment immunity does not apply, they are nonetheless entitled to immunity for discretionary acts. As stated above, however, determining the application of any such immunities at the pleadings stage is disfavored, and the Court declines to do so here.

## CONCLUSION

As set forth above, State Defendants' Motion to Dismiss (ECF No. 18) is granted in part and denied in part. The Motion is GRANTED as to the Twelfth Claim for Relief insofar as that Claim purports to state a claim against Defendant Tom Torlakson in his individual capacity. In all other respects, the Motion is DENIED. Plaintiffs may amend their Complaint, should they choose to do so, not later than twenty (20) days after the date this Memorandum and Order is electronically filed. If no amended complaint is filed within said twenty (20) day period, without further notice to the parties, the causes of action dismissed by virtue of this Memorandum and Order will be dismissed with prejudice

IT IS SO ORDERED.