FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IRVINE UNIFIED SCHOOL DISTRICT,
*Plaintiff-Appellant*,

v.

K. G., an adult student,
*Defendant-Appellee.*

No. 14-56457

D.C. No.
2:10-cv-01431-
JVS-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted August 1, 2016
Pasadena, California

Filed April 13, 2017

Before: Diarmuid F. O'Scannlain, Johnnie B. Rawlinson,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain;
Partial Concurrence and Partial Dissent by Judge Callahan

# SUMMARY[*]

## Individuals with Disabilities Education Act / Attorneys' Fees

The panel affirmed the district court's grant of relief from judgment but vacated its award of attorneys' fees to a student in an action under the Individuals with Disabilities Education Act.

On remand from a ruling that student K.G.'s school district was the agency responsible for K.G.'s free appropriate public education, K.G. moved for statutory attorneys' fees. The district court denied the motion on the ground that K.G. was not a prevailing party but subsequently granted relief from judgment under Federal Rule of Civil Procedure 60(b) and awarded fees.

The panel held that the district court did not abuse its discretion in granting relief under Rule 60(b)(1) on the ground of excusable neglect.

The panel held that K.G. was a prevailing party entitled to attorneys' fees because K.G. achieved the benefit sought, a decision as to which agency was responsible to provide a free appropriate public education. The panel rejected the argument that K.G. could not have benefitted from the litigation because K.G. graduated with a high school diploma months before the district court decided the case. The panel held that K.G.'s victory was not trivial or merely technical.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held, however, that it was not clear whether the amount of attorneys' fees awarded was reasonable because much of counsel's work took place after K.G.'s graduation. The panel vacated the fee award and remanded for the district court to determine whether the hours billed following K.G.'s graduation were truly the result of advocacy reasonably calculated to advance K.G.'s interests.

Concurring and dissenting in part, Judge Callahan joined all of the majority opinion except for Section III C, addressing the amount of fees. Judge Callahan wrote that there was no justification in either the IDEA or case law for limiting an award of attorneys' fees to a prevailing party based on whether the student graduated.

## COUNSEL

S. Daniel Harbottle (argued), Harbottle Law Group, Irvine, California, for Plaintiff-Appellant.

Marcy J.K. Tiffany (argued), Tiffany Law Group, Torrence, California, for Defendant-Appellee.

Sue Ann Salmon Evans and Karl H. Widell, Dannis Woliver Kelley, Long Beach, California, for Amici Curiae California School Boards Association Education Legal Alliance & National School Boards Association.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether the attorney for a student covered under the Individuals with Disabilities Education Act is entitled to fees for legal work performed after the student's graduation from public school.

I

This case originates from a dispute over which California government entity would be responsible for funding the education of K.G., an emotionally disturbed minor from California. Following K.G.'s release from juvenile hall in 2007, the California Department of Education ("the State"), the Orange County Department of Education ("the County"), and the Irvine Unified School District ("the School District") all agreed that K.G. was entitled to a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400(d)(1)(A), but each entity disclaimed responsibility for funding such FAPE. Eventually, the County agreed to fund K.G.'s FAPE, temporarily, until the financially responsible agency could be determined as a matter of law.

A

In November 2009, an administrative law judge ("ALJ") within California's Office of Administrative Hearings ruled that the School District was the agency responsible for the FAPE under California law. The District filed a civil action in federal district court challenging the ALJ's decision and naming the State, the County, and K.G. as co-defendants in

February of 2010, two months before K.G.'s graduation in April. Proceedings in the district court continued for seven months after K.G.'s graduation and culminated in a decision holding the State responsible for K.G.'s FAPE in November of 2010. The State appealed to this court, and we determined that, as a matter of California law, the School District was responsible for providing K.G.'s FAPE and not the State; we remanded the case for proceedings consistent with our decision. *See Irvine Unified Sch. Dist. v. Cal.*, 506 F. App'x 548, 550 (9th Cir. 2013) (unpublished).

On remand and before the entry of judgment in district court, K.G. moved for statutory attorneys' fees under IDEA. 20 U.S.C. § 1415(i)(3)(B)(i)(I). K.G., still with the original attorney, requested $232,625.00 in fees and $1,286.85 in costs. The district court denied the request for attorneys' fees entirely, holding that K.G. was not a "prevailing party" under IDEA because K.G.'s "victory"—the conclusive determination as to which agency would fund the FAPE—was merely "technical or de minimis." During the course of litigation, K.G. had maintained that the State was responsible for the FAPE rather than the School District, an argument the district court accepted. The district court therefore reasoned that, "given the inherently equitable nature of deciding on attorney fee awards, it seems inappropriate for the District to pay fees accumulated while K.G. was arguing the District's own position." K.G. failed to file a timely appeal.

B

With the assistance of a new attorney, K.G. sought relief from the district court's denial of fees under Federal Rule of Civil Procedure 60(b) in February 2014. K.G. argued that the

original attorney had "experienced several traumas, including the death of her mother and father-in-law as well as her own life-threatening condition, which triggered an unusually severe bout of depression and anxiety." According to K.G., the denial of substantial attorneys' fees was the final blow, deepening the attorney's depression and "feelings of hopelessness," rendering her "too incapacitated to file a timely appeal of the Fee Order." The district court found K.G.'s arguments persuasive and granted relief from judgment on May 20, 2014. After receiving such relief, K.G. again moved for attorneys' fees. This time, K.G. sought a total of $282,038.25, representing $221,971.35 for work performed by the original attorney and $60,066.90 for work performed by the new attorney.

The district court went on to grant in part K.G.'s renewed motion for attorney's fees, mandating that the School District pay $174,803.65 in fees and costs: the court awarded $126,657.25 for work performed by K.G.'s original attorney and $48,146.40 for work performed by K.G.'s new attorney. The School District timely appeals the district court's order.[1]

## II

The School District contends that the district court erred in granting K.G. relief from its original judgment denying attorneys' fees. We review a district court's grant of relief under Federal Rule of Civil Procedure 60(b) for abuse of

---

[1] K.G. filed a cross-appeal, No. 14-56524, challenging the district court's decision to reduce appellate fees sought by the original attorney by more than 50%. Such appeal has since been dismissed by stipulation of the parties.

discretion. *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1031 (9th Cir. 2008).

## A

The School District first argues that the district court did not apply the correct legal rule in evaluating whether to grant relief. Rule 60(b)(1) provides that a district court "may relieve a party . . . from a final judgment" in cases of "mistake, inadvertence, surprise, or excusable neglect." To determine whether a party's failure to meet a deadline constitutes "excusable neglect" under Rule 60(b)(1), a court "must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).

The district court began its analysis by rejecting the District's contention that it would be prejudiced by a grant of relief. The District argued that it had fixed its budget under the assumption that an order for attorneys' fees was off the table and had relied on the district court's denial of fees in negotiating settlements in other matters. The district court found both claims unpersuasive. As to the remaining relevant factors, the district court determined that K.G.'s delay in pursuing Rule 60(b) relief was understandable in light of the original attorney's poor mental and physical health. The district court thus "identified and applied the correct legal rule,"*United States. v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009), and applied it to the facts at hand, weighing each element before arriving at its decision to grant relief.

B

The School District counters that even if the district court applied the correct legal rule, the court's factual findings were flawed—specifically, that the district court "gave undue weight to the Declaration of Dr. Lorna Swartz" and other evidence outlining the attorney's psychological difficulties. It cites evidence in the record demonstrating that K.G.'s original attorney continued to practice law during the period when Swartz asserted that she was incapable of doing so. The School District notes that the attorney communicated with opposing counsel and, when she stated that she did not oppose a proposed judgment sent to her by the State, explained via email that she had "been out of the office in marathon [individual education program team] meetings." Such facts, according to the School District, undermine K.G.'s claim that the original attorney was "incapacitated."

The district court noted such criticisms but nevertheless found Dr. Swartz's declaration persuasive:

> While the Court acknowledges that this contemporaneous evidence displays some ability to continue her practice, the Court still concludes that Swartz's evidence and [the attorney's] own declaration confirm that her depression, and in particular her feelings of hopelessness in regard[] to the fee motion, were so severe that her neglect in failing to appeal was excusable.

Although one might reasonably disagree as to whether the attorney was truly incapable of performing her job, the district court's decision to grant relief was not "illogical,

implausible, or without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263.

### III

The School District next argues that the district court abused its discretion in granting K.G.'s motion for attorney's fees. IDEA provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Thus, in reviewing the district court's fee award, we must confirm that (1) K.G. was in fact a "prevailing party" and (2) the fees were reasonable. *Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006).

### A

Under the Supreme Court's "'generous formulation' of the term, 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 483 (9th Cir. 2015) (applying the *Farrar* definition of "prevailing party" to IDEA attorneys' fees provision). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

In initiating the IDEA action in California's Office of Administrative Hearings, K.G. requested that "the ALJ deem one of the [three agencies] responsible to provide him FAPE." K.G.'s prayer was answered in full when the ALJ designated the School District as the responsible agency. The district court similarly granted K.G.'s requested relief, originally by designating the State as the responsible agency, then by ordering the District to pay the bill following our reversal. *See Irvine Unified Sch. Dist*, 506 F. App'x at 550. K.G. thus achieved the "benefit [he] sought in bringing the suit." *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1498 (9th Cir. 1994). By receiving relief on the merits, K.G. "met that minimum condition for prevailing party status." *Farrar*, 506 U.S. at 116 (O'Connor, J., concurring) ("One dollar is not exactly a bonanza, but it constitutes relief on the merits.").

The School District nevertheless suggests that K.G. could not have benefitted from the litigation because K.G. graduated with a high school diploma months before the district court decided the case. It cites *Farrar v. Hobby*, 506 U.S. 103 (1992), which in turn relies heavily on *Rhodes v. Stewart*, 488 U.S. 1 (1988) (per curiam). In *Rhodes*, two inmates sued prison officials after they were denied the right to subscribe to a magazine. Though the prisoners successfully won a declaratory judgment granting them the right to subscribe to the magazine, the Supreme Court held that they were not "prevailing parties" for purposes of assigning attorneys' fees. *Rhodes*, 488 U.S. at 2. The Court reasoned that "a modification of prison policies . . . could not in any way have benefited [sic] either plaintiff, one of whom was dead and the other released before the District Court entered its order." *Id.* at 4.The prisoners could not be considered "prevailing parties" for purposes of assigning statutory

attorneys' fees because the judgment could not alter the behavior of the defendant towards them. Just like the prisoners in *Rhodes*, the District argues that K.G. received no real benefit from the district court's order because he was no longer a student when judgement was entered.

In elucidating the contours of its "prevailing party" definition, however, the Supreme Court in *Farrar* explained that the inmates in *Rhodes* could not be said to have "prevailed" when their litigation culminated merely in a declaratory judgment: "Whatever 'modification of prison policies' the declaratory judgment might have effected 'could not in any way have benefitted either plaintiff, one of whom was dead and the other released.'" *Farrar*, 506 U.S. at 110 (quoting *Rhodes*, 488 U.S. at 4). A party receives a meaningful benefit "if, and only if, [the judgment] affects the behavior of" the opposing party towards it. *Rhodes*, 488 U.S. at 4. Because the plaintiffs were no longer in prison custody, they could not benefit from the particular relief they had won.

The posture of this case differs significantly from that of *Rhodes*. Unlike the prisoners in *Rhodes*, K.G. secured a judicially enforceable judgment—the ALJ's decision—when it still mattered. *See T.B. ex rel. Brenneise*, 806 F.3d at 483 ("It is true that the educational relationship between T.B. and the district ended in 2008 when the Brenneises left San Diego. But they had still earned relief before they left in the form of an enforceable judgment."). The administrative record demonstrates that for a brief period at least some threat of discharge from school hung over K.G.'s head as a result of the funding dispute. A ruling from an ALJ definitively holding one agency responsible was the most effective means of eliminating such risk. K.G. secured this initial judgment on November 30, 2009, well before high school graduation

ceremonies occurred in April of the following year. At that point, K.G.'s original counsel had billed 60.6 hours of her time to this case.

Litigation could have ceased with the decision of the ALJ. Instead, it was the School District that kept the meter running when it filed a complaint in district court. One could not reasonably expect K.G., who was still enrolled in school when the District *named the student as a defendant* in federal court, to refrain from expending resources as the case progressed. And it would make little sense to render a party wholly ineligible for an award of fees incurred in defending its victory, especially during the period when K.G. was still enrolled.

B

A party whose "success on a legal claim can be characterized as purely technical or de minimis" is not entitled to fees. *Parents of Student W.*, 31 F.3d at 1498. The School District argues that K.G., even if properly termed a "prevailing party," obtained only limited success because it was effectively a forgone conclusion that some agency would fund K.G.'s education. In that sense, the District contends, K.G.'s legal victory amounted to nothing more than the designation as to which agency would be responsible for providing the relief he had already received. And, as the District notes, most of the litigation preceding this "victory" occurred after the threat of discharge had been essentially eliminated because of the County's willingness to fund K.G.'s FAPE temporarily.

Contrary to the District's suggestion, however, K.G.'s victory in this case cannot be dismissed as "de minimis." *Cf.*

*Farrar* 506 U.S. at 115 ("When a plaintiff recovers only nominal damages . . . the only reasonable fee is usually no fee at all."). K.G. received the requested relief in full by forcing an agency to take responsibility for funding the FAPE. Such a victory was significant because it eliminated any residual risk that K.G. could be discharged from school. K.G. argued the case before the ALJ in order to guarantee that a California government agency would pay the cost of the FAPE: the ALJ's decision notes that the sole issue of the administrative proceedings was "Which educational agency is responsible for providing [K.G.] with a [FAPE]?" Securing an enforceable judgment holding one such agency responsible for that FAPE, and later defending that victory in a civil action in federal court, certainly constitutes success in a "significant issue" of litigation. *Parents of Student W*, 31 F.3d at 1498.[2]

K.G. qualified as a prevailing party under IDEA, and this victory was not trivial or merely technical. An award of some amount of fees incurred in achieving this end was therefore justified.

## C

That, however, does not end our inquiry. Even when a party is entitled to *some* fees, the amount awarded must be "reasonable." 20 U.S.C. § 1415(i)(3)(B)(i). The School District argues that the fee award was unreasonably high given that much of the work performed on K.G.'s behalf took place after graduation when K.G. was no longer

---

[2] K.G.'s motion for us to take judicial notice of the district court's order awarding fees in *A.S.*, as well as the docket for this case, filed September 22, 2015, is **GRANTED**.

vulnerable. Before graduating, K.G. had at least some skin in the game. Although the threat of discharge may have been remote given the County's willingness to fund K.G.'s FAPE temporarily, it remained reasonable for K.G. to continue to pursue a more definitive resolution. This changed in April 2010, of course, when the risk of discharge evaporated as a result of K.G.'s graduation. With a diploma in hand, K.G. moved on to the next phase of life, having been provided with all that IDEA guaranteed him. Yet the litigation to which K.G. was a party continued.

While K.G.'s original attorney reported spending only 60.6 hours advocating on behalf of K.G. during state administrative proceedings, she purportedly dedicated 134.5 hours litigating before the district court in support of holding the State responsible for the FAPE rather than the District. Counsel's zealous advocacy on behalf of her long-graduated client continued before this court—she reported spending 206.5 hours on an appeal that did not even commence until roughly ten months after K.G.'s graduation.

Although the district court wisely reduced requested fees in its final award, we question the need for *any* significant advocacy on behalf of K.G. following the student's high school graduation. If the vagaries of litigation demanded K.G.'s continued nominal presence as a party, counsel certainly deserves to be compensated for advocacy undertaken on K.G.'s behalf (and in pursuit of fees derived from such work). But the need for such work may have been minimal given what appears to be an utter lack of risk borne by K.G. following graduation. Once a student receives all the statutory benefits guaranteed by IDEA and no longer faces even a nominal risk that those benefits might be taken away, only exceptional circumstances can justify an ever-

lengthening billing invoice. A finding that K.G. might end up liable for bills already paid, or the possibility that his diploma might be retroactively revoked, for instance, would certainly explain the need for hundreds of hours of advocacy after his graduation in 2010. But IDEA is not "a relief Act for lawyers." *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring) (quoting *Riverside v. Rivera*, 477 U.S. 561, 588 (1986) (Rehnquist, J., dissenting)). Here, the burden is on K.G. to demonstrate why his continued participation in this litigation was necessary after he received everything to which he was entitled.

It may well be that the district court took into account the forgoing considerations in reducing the fees originally requested, but it is not clear from the court's order awarding fees. On remand, the district court should review the work undertaken following K.G.'s graduation to determine whether it truly furthered K.G.'s interests. Further inquiry into why K.G. did not seek to remove himself from the proceedings following his graduation would be appropriate. Legal work the district court identifies as having been unmoored from genuine advocacy in furtherance of K.G.'s interests may not be rewarded with fees. The district court must explain why, specifically, any given percentage reductions are proper and how such fees are appropriately allocated to work performed before and after K.G.'s graduation. *See Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) ("[W]hile the district judge explained why he thought the award was excessive, he failed to explain why he thought that a 40 percent reduction would be an appropriate remedy.").

IV

We affirm the district court's grant of relief from judgment, but we vacate the fee award. On remand, the district court shall determine whether the hours billed following K.G.'s graduation were truly the result of advocacy reasonably calculated to advance K.G.'s interests as opposed to those of K.G.'s lawyers, and the district court shall adjust the fee award accordingly with appropriate explanation.[3]

The parties shall bear their own costs incurred during this appeal.

**AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

---

CALLAHAN, Circuit Judge, concurring and dissenting in part:

I join all of Judge O'Scannlain's opinion except for Section III C. I can find no justification in either the IDEA or case law for limiting an award of attorneys' fees to a prevailing party based on when the student graduated. Rather, such a restriction fails to appreciate the IDEA and its carefully crafted provisions for attorneys' fees.

---

[3] The Motion for Leave to File Brief of Amici Curiae California School Boards Association Education Legal Alliance & National School Boards Association in Support of Irvine Unified School District and Reversal of the District Court's Decision, filed March 25, 2015, is **GRANTED**.

The IDEA allows for attorneys' fees, under certain conditions, for either the plaintiffs or defendants.[1] The IDEA further contains provisions for insuring that the amount of

---

[1] 20 U.S.C. § 1415(i)(B) states:

(B) Award of attorneys' fees

(i) In general

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs–

(I) to a prevailing party who is the parent of a child with a disability;

(II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

(III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

attorneys' fees is reasonable.**²**  Here, as the majority notes, it

---

**²** 20 U.S.C. § 1415(i)(F) and (G) provide:

(F) Reduction in amount of attorneys' fees

Except as provided in subparagraph (G), whenever the court finds that–

(I) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A),

the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

(G) Exception to reduction in amount of attorneys' fees

The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.

was the School District and the State that continued this litigation well after K.G.'s graduation. Thus, the only conceivable way that K.G.'s graduation might figure into the award of attorneys' fees is under § 1415(i)(F)(iii) as supporting an assertion that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding."

But "graduation from high school does not necessarily eliminate the possibility of receiving benefits under IDEA." *McCormick v. Waukegan Sch. Dist. No. 60* , 374 F.3d 564, 568 n. 1 (7th Cir. 2004). Furthermore, K.G.'s graduation has nothing to do with the reasonableness of his attorneys' efforts in this litigation. True, no one would take away his diploma. But the fact that the County was willing to fund K.G.'s FAPE temporarily did not necessarily preclude a court from ordering otherwise.

In order to obtain the attorneys' fees she had earned, K.G.'s attorney had to stay in the litigation until the entry of a final judgment because only then could she be sure that K.G. was a prevailing party and could calculate her fees. Indeed, in this very case, the district court ruled in October 2013—over three years after K.G. had graduated—that K.G. was not a prevailing party, and thus was not entitled to an award of attorneys' fees. It took another year for K.G. to change the district court's mind and procure an order that he was a prevailing party and was entitled to attorneys' fees. Thus, when K.G. graduated from high school is simply not relevant to determining the reasonableness of the attorneys' fees incurred in representing K.G. for over five years.

More importantly, the majority's approach overlooks or denies the importance of attorneys' fees in IDEA cases. The

purpose of K.G.'s suit under the IDEA was—as the majority recognizes—to ensure that he received a FAPE.  But this is hardly the type of benefit that can be shared with an attorney. Accordingly, the IDEA provides for awards of attorneys' fees where a child or parent prevails.[3]  Without such a provision very few attorneys would take IDEA cases.

The cases cited by the majority for the proposition that the IDEA is "not a relief Act for lawyers" are inapposite.  The comment was reiterated by Justice O'Connor in her concurring opinion in  *Farrar v. Hobby*, 506 U.S. 103, 122 (1992), but she was addressing attorneys' fees under 42 U.S.C. § 1988, not fees under the IDEA.  Justice O'Connor was quoting Justice Rehnquist's dissent in *City of Riverside v. Rivera*, 477 U.S. 562, 588 (1986), which also concerned attorneys' fees under § 1988, not the IDEA.

There are critical differences between claims under § 1983 which may include damages, and claims under the IDEA which for the most part, and certainly in this case, concern primarily providing children with FAPEs.  *See Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 873 (9th Cir. 2011) (en banc) (noting that monetary damages are ordinarily not available under the IDEA).  Just months ago, the Supreme Court in *Fry v. Napolean Community Schools*, 137 S. Ct. 743, 752–55 (2017), carefully set forth a number of differences between claims under the IDEA and claims under other

---

[3] *See* S. Rep. No. 99-112, at 13 (1985) ("It is the committee's intention that a parent or legal representative should be free to select and be represented by the attorney of his/her choice.").

overlapping statutes.**[4]**  Opinions such as *Fry* disavow any

---

**[4]** For example, the Supreme Court noted:

> If a lawsuit charges [the denial of a FAPE], the plaintiff cannot escape § 1415(l ) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs in *Smith* claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act.  Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises.  But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required.

137 S. Ct. at 754 (footnote omitted).  It further explained:

> The IDEA, of course, protects only "children" (well, really, adolescents too) and concerns only their schooling. § 1412(a)(1)(A).  And as earlier noted, the statute's goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her "unique needs." § 1401(29); see *Rowley*, 458 U.S., at 192, 198, 102 S.Ct. 3034; supra, at 753 – 754.  By contrast, Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools.  And those statutes aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs.  See *supra*, at 749 – 750.  In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions.

*Id*. at 755–56.

suggestion that the IDEA can be analogized to § 1983.

Finally, the majority's questioning of "the need for any significant advocacy on behalf of K.G. following the student's high school graduation," Majority at 14, is at odds with our standard of review of a district court's award of attorneys' fees under the IDEA. We review an award of attorneys' fees for abuse of discretion. *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 861 (9th Cir. 2004). The underlying factual determinations are reviewed for clear error and the legal analysis relevant to the fee determination is reviewed de novo. *Id*; *see also T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 474 (9th Cir. 2015). Here, when K.G. graduated from high school has little, if any relevance, to the factual determination of the reasonableness of the attorneys' fees incurred during this law suit that commenced in 2010. Furthermore, the majority cites no authority for the proposition that K.G.'s date of graduation is relevant, as a matter of law, to the determination of the reasonableness of the attorneys' fees.

Requiring the district court to re-evaluate its award of attorneys' fees based on the date of K.G.'s graduation from high school is contrary to the spirit of the IDEA and its carefully crafted provisions for attorneys' fees, improperly analogizes the IDEA to § 1983, and is at odds with our standard of review of attorneys' fee awards. Accordingly, I dissent from Section III C of the majority's opinion, and would affirm the district court on all issues.